STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LUCIO
W. PATINO AND GUILLERMO BARRIGA,
DEFENDANTS-RESPONDENTS.

Argued September 11, 1979—Decided May 19, 1980.

*William F. Lamb,* Deputy Attorney General, argued the cause for petitioner (*Albert G. Fredericks,* Deputy Attorney General, of Counsel and on the brief; *John J. Degnan,* Attorney General of New Jersey, attorney).

*Thomas J. Cammarata* argued the cause for respondents (*Shaljian, Cammarata & O'Connor,* attorneys).

The judgment of the Court was delivered by

CLIFFORD, J.

The Appellate Division reversed defendants' convictions and remanded for a new trial on charges of possession with intent to distribute cocaine in violation of *N.J.S.A.* 24:21–20(a)(2) and *N.J.S.A.* 24:21–19(a)(1). 163 *N.J.Super.* 116 (1978). We granted the State's petition for certification, 79 *N.J.* 477 (1979), to consider whether the trial court should have suppressed as evidence the cocaine discovered in the trunk of the automobile occupied by these defendants. The State contends that under the circumstances here presented the search was authorized either as incident to the arrest [1] or pursuant to probable cause. We disagree and hence affirm.

I

As the court below observed, the pertinent facts must be gleaned from the testimony of State Trooper Phillips who, while

---

[1] The Appellate Division asserted that the State did not undertake to justify the search of the locked trunk as lawfully incident to the arrest for possession of marijuana. *State v. Patino,* 163 *N.J.Super.* 116, 121 (1979). This is not accurate, inasmuch as the point was advanced by the State in its Appellate Division brief. While the State practically conceded, in oral argument before us, that it did not rely on the "search-incident-to-arrest" theory, it did make that contention in its Petition for Certification before this Court, wherefore we address it to put to rest any uncertainty as to the applicability of that theory to the present facts.

on routine patrol during the late afternoon of November 10, 1976, stopped an automobile occupied by defendants on State Highway 73 in Mt. Laurel Township. This was simply a routine motor vehicle check, the trooper having observed no traffic violations or any suspicious activity on the part of the occupants.[2] The events leading up to and including the questioned search are set forth in the Appellate Division opinion as follows:

The driver immediately obeyed the trooper's direction to pull over and stop. As the trooper approached the vehicle he saw the passenger hand the driver a registration and an insurance document. The driver then handed Phillips a registration, a driver's license, and an insurance card.

While questioning the occupants about the motor vehicle documents Phillips observed "a round cylindrical clear plastic container" about six inches long and an inch in diameter half-full of green vegetation on the floor next to the front seat. Based on his experience he concluded there was marijuana in the plastic container and he asked the occupants to step out of the vehicle. At this point the officer was also concerned about which of the occupants actually owned the driver's license because neither could produce any other identification.

Phillips then arrested the defendants for possession of marijuana "that I saw in the vehicle." He then "patted them down" for any "weapons or anything else they might have." At this point the driver, Barriga, admitted that the driver's license belonged to the passenger, Patino. The car was registered in the name of Patino's sister. The trooper then seized the container of marijuana and also a hand-rolled marijuana cigarette which he had found on the floor of the front seat when he observed the container. He next tried to open the locked glove compartment. Pursuant to Phillips' order Patino unlocked the glove compart-

---

[2]At the time the defendants were stopped by Trooper Phillips in 1976 for a routine license and registration check pursuant to *N.J.S.A.* 39:3–29, such a random stop was an entirely proper action. *State v. Gray*, 59 *N.J.* 563, 567 (1971). Since that time, the United States Supreme Court has declared that random stops for license and registration checks violate the Fourth Amendment prohibition of unreasonable seizures. *Delaware v. Prouse*, 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 674 (1979). However, this Court has today declared the rule of *Prouse* to be not retroactive, and held it applicable only to random stops occurring after the date of the *Prouse* decision, March 27, 1979. *State v. Carpentieri*, 82 *N.J.* 546 (1980).

ment. The trooper looked in, and found "it was absolutely empty." The trooper also searched the ashtray and under the seat. He found nothing else incriminating in the passenger area.

Finally, the trooper turned his attention to the locked trunk. Patino, pursuant to instructions, unlocked the trunk. Inside a shopping bag in the trunk the trooper found the cocaine. [163 N.J.Super. at 119–20.][3]

Upon the denial of their motion to suppress the evidence for violation of their Fourth Amendment rights, defendants pleaded guilty and were sentenced pursuant to a plea bargain to indeterminate reformatory terms not to exceed five years. With respect to the marijuana, the defendants were charged under a municipal court complaint with possession of less than 25 grams, a nonindictable disorderly persons offense. N.J.S.A. 24:21–20(a)(4); see N.J.S.A. 2C:43–1.

In denying the motion to suppress the cocaine the trial court assumed an absolute right on the part of the trooper to search the entire automobile incident to the arrest of the occupants for joint possession of a small amount of marijuana. As indicated, the Appellate Division reversed that determination, relying primarily on Wimberly v. Superior Court, 16 Cal.3d 557, 128 Cal. Rptr. 641, 547 P.2d 417 (Sup.Ct.1976). The court below held that the discovery of a small amount of marijuana in the passenger compartment gave rise only to an inference that the occupants were casual drug users, and thus furnished no cause to search

-------

[3]Actually, the officer discovered a folded pillow inside the shopping bag. It was upon removing it that he found inside the pillow two foil-wrapped objects which ultimately proved to be over three pounds of cocaine.

Further, it is not clear from the record if the automobile trunk was locked. The Appellate Division assumed that it was. We conclude that whether the trunk was locked is not dispositive here, as the defendant's possible failure to lock the automobile trunk would not alter its fundamental character as a repository for personal, private effects.

the trunk where large "dealer-size" quantities of drugs would presumably be stored. As the Appellate Division concluded, "the search [of the trunk] was purely investigatory and the seizure a product of luck and hunch, a combination of insufficient constitutional ingredients." 163 *N.J.Super.* at 125.

## II

Certain fundamental propositions bear restatement at the outset. The Fourth Amendment to the United States Constitution requires the approval of an impartial judicial officer based on probable cause before most searches may be undertaken. *E. g., Chambers v. Maroney,* 399 *U.S.* 42, 51, 90 *S.Ct.* 1975, 1981, 26 *L.Ed.*2d 419, 428, *reh. den.,* 400 *U.S.* 856, 91 *S.Ct.* 23, 27 *L.Ed.*2d 94 (1970). The same holds true for Article 1, paragraph 7 of the New Jersey Constitution. *State v. Ercolano,* 79 *N.J.* 25, 41–42 (1979), and cases cited therein. The warrant requirement of these provisions may be dispensed with in only a few narrowly circumscribed exceptions. The *prima facie* invalidity of any warrantless search is overcome only if that search falls within one of the specific exceptions created by the United States Supreme Court. *Ercolano, supra,* 79 *N.J.* at 42. Where, as here, the State seeks to validate a warrantless search, it bears the burden of bringing it within one of those exceptions. *State v. Sims,* 75 *N.J.* 337, 352 (1978).

Here, as noted above, the State seeks to justify the search on the grounds that it was incident to a lawful arrest for possession of marijuana, *Chimel v. California,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685, *reh. den.,* 396 *U.S.* 869, 90 *S.Ct.* 36, 24 *L.Ed.*2d 124 (1969), or under the "automobile exception" to the Warrant Clause, *Carroll v. United States,* 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). We consider the contentions in that order.

## III

The Supreme Court has sanctioned searches incident to arrest primarily as a method of protecting the police officer and, to a lesser extent, as a means of preventing destruction of evidence. *E. g., Chimel v. California, supra,* 392 *U.S.* at 763, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694. The scope of such searches is authoritatively defined in *Chimel* as encompassing weapons and evidence on the arrestee's person and in the area within his immediate control—the area from within which he might gain possession of a weapon or destructible evidence. *Id.*

*Chimel* involved the search of a house; and while the automobile has never been granted the protection accorded the home, *see Chambers v. Maroney,* 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.*2d 419 (1970), it is no longer open to question that automobiles remain within the protection of the Fourth Amendment and the Warrant Clause. *Marshall v. Barlow's Inc.,* 436 *U.S.* 307, 315 *n.* 10, 98 *S.Ct.* 1816, 1821, 56 *L.Ed.*2d 305, 313 (1978); *Coolidge v. New Hampshire,* 403 *U.S.* 443, 461, 91 *S.Ct.* 2022, 2035, 29 *L.Ed.* 2d 564, 580 (1971). In fact, the trend is to accord an increased amount of Fourth Amendment protection to automobiles as courts recognize that automobile travel is a basic, necessary and pervasive way of American life. See, *e. g., Delaware v. Prouse,* 440 *U.S.* 648, 662, 99 *S.Ct.* 1391, 1400, 59 *L.Ed.*2d 660, 673 (1979). Likewise is it clear that courts have not hesitated to manifest concern for the personal safety of police officers. See *Pennsylvania v. Mimms,* 434 *U.S.* 106, 98 *S.Ct.* 330, 54 *L.Ed.*2d 331 (1977); *State in Interest of H. B.,* 75 *N.J.* 243 (1977). However, as was emphasized in *Chimel v. California, supra,* 395 *U.S.* at 763, 89 *S.Ct.* at 2040, 23 *L.Ed.*2d at 694, this concern may not be inflated to justify the routine search of any room or area other than that in which an arrest occurs, nor will it justify a search through closed or concealed places beyond the control or reach of the defendant even though in the area of the arrest itself.

Here, the police officer's pat-down of the defendants and the search of the passenger compartment, the area within the immediate control of the defendants, satisfied the legitimate concerns for the safety of Trooper Phillips and were justified as a search incident to arrest for possession of *marijuana*. However, we do not see any circumstances in this case which would lead a police officer reasonably to believe that two arrestees patted down and therefore presumably free of weapons on their persons, and detained at the front of an automobile, might be able to gain access to an enclosed automobile trunk in such a way as to endanger or overpower an armed, albeit unaided, state trooper, or to enable them to destroy evidence contained therein. The circumstances do not suggest that the extension of the search to the trunk of the vehicle was necessary either to protect the safety of the officer or to protect against the destruction of evidence. In fact these circumstances generate a contrary inference. The trooper's willingness to direct the defendants to assist him in opening the trunk indicates that he neither feared for his safety nor anticipated the destruction of evidence. Therefore, the search of the trunk has not been justified; the State has failed to meet the burden required to bring the trunk search within the *Chimel* exception as a search incidental to arrest. Accordingly, the evidence seized from the trunk must be suppressed unless admissible on some other grounds.

## IV

The State further seeks to justify the trunk search under the automobile exception to the Warrant Clause, *Carroll v. United State, supra*, which permits police to stop and search a moving or readily movable vehicle when there is probable cause to believe the vehicle contains criminally related objects. The rationale for this exception is grounded in the exigent circumstances created by the inherent mobility of vehicles and the somewhat lessened expectation of privacy in one's vehicle.

*Cady v. Dombrowski,* 413 *U.S.* 433, 441–42, 93 *S.Ct.* 2523, 2528, 37 *L.Ed.2d* 706, 715 (1973).

■ However, "[m]obility alone does not justify unbridled search of those parts of a vehicle where one has a reasonable expectation of privacy." *United State v. Powers,* 439 *F.2d* 373, 375 (4 Cir.), *cert.* den., 402 *U.S.* 1011, 91 *S.Ct.* 2198, 29 *L.Ed.2d* 434 (1971), quoted in *State v. Astalos,* 160 *N.J.Super.* 407, 414 (Law Div.1978). One operating or travelling in an automobile does not lose all reasonable expectation of privacy simply because the vehicle is mobile and subject to government regulation. *Delaware v. Prouse, supra,* 440 *U.S.* at 662, 99 *S.Ct.* at 1400, 59 *L.Ed.2d* at 673.

This Court has noted that in the case of a moving vehicle, "probable cause is the minimal requirement for a reasonable search permitted by the constitution." *State v. Waltz,* 61 *N.J.* 83, 87 (1972). As has often been said, probable cause is more than bare suspicion but less than legal evidence necessary to convict. *E. g., Brinegar v. United States,* 338 *U.S.* 160, 175, 69 *S.Ct.* 1302, 1310, 93 *L.Ed.* 1879, 1890 (1949); *State v. Waltz, supra,* 61 *N.J.* at 87. It has been defined as a "well grounded suspicion" that a crime is being committed. *State v. Burnett,* 42 *N.J.* 377, 387 (1964). Probable cause is not a technical concept but one having to do with "the factual and practical considerations of everyday life" on which reasonable and prudent persons act. *Brinegar v. United States, supra,* 338 *U.S.* at 175, 69 *S.Ct.* at 1310, 93 *L.Ed.* at 1890. As the Appellate Division correctly observed, "[n]o one could suggest that the police have a right to conduct random searches of [automobiles] on mere whim or guess without a reasonable belief that criminal activity is afoot." 163 *N.J.Super.* at 121.

■ A police officer must not only have probable cause to believe that the vehicle is carrying contraband but the search must be reasonable in scope. It is widely recognized that a search, although validly initiated, may become unreasonable

because of its intolerable intensity and scope. *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968); *State v. Astalos, supra*, 160 *N.J.Super.* at 413. As stated by the *Terry* court, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." 392 *U.S.* at 19, 88 *S.Ct.* at 1878, 20 *L.Ed.*2d at 904; see *State v. Murray*, 151 *N.J.Super.* 300 (App.Div.), certif. den., 75 *N.J.* 541 (1977); *State v. Astalos, supra.*

In *State v. Murray, supra*, a van was detained for unspecified traffic violations. While the trooper was checking the appropriate papers, he observed a so-called "roach clip" and an amber vial containing "vegetative dust." After concluding that the vial contained marijuana residue (not enough for even one cigarette) the officer ordered the occupants from the vehicle and embarked upon a search. The van contained a sink, enclosed on all sides except for an opening covered by the driver's seat. The trooper removed the driver's seat and found under the sink an attache case smelling of hashish. A knife was used to force the lock on the case, revealing a sizeable quantity of hashish. The Appellate Division held that the pretrial motion to suppress the contents of the attache case should have been granted, reasoning that the scope of the search exceeded all bounds of reasonableness when the officer "commenced interfering with the structural integrity of the vehicle itself." *Id.* at 307; *accord, State v. Scanlon*, 84 *N.J.Super.* 427 (App.Div.1964).

In *State v. Astalos, supra*, the Law Division granted a motion to suppress a gun found in an automobile trunk after a trooper had halted a speeding van and detected a small amount of hashish on the driver's person. The court, apparently placing some weight on the fact that the person on whom the contraband was found was not the owner of the vehicle (a feature not present in *Murray*, held that the search of the trunk was motivated not by probable cause but "only a bare suspicion that further quantities" of drugs would be discovered there. 160 *N.J.Super.* at 415.

At the time of the arrest here, Trooper Phillips knew that two offenses had been committed: operation of a motor vehicle without a license, and possession of a small amount of marijuana. With regard to the first offense, a finding that a traffic violation has occurred will permit a search of the vehicle for evidence connected with that violation. Such a search must be reasonable in scope and tailored to the degree of the violation. See *State v. Scanlon, supra,* 84 *N.J.Super.* at 434; *State v. Barrett,* 170 *N.J.Super.* 211, 215 (Law Div. 1979). As was noted by the *Barrett* court, "a search to find the registration would be permissible if confined to the glove compartment or other area where a registration might normally be kept in a vehicle. * * Certainly there could be no expectation that any indicia of title would be found in the rear of the vehicle. The search should not have gone into that area." 170 *N.J.Super.* at 215. See also *State v. Hayburn,* 171 *N.J.Super.* 390 (App.Div.1979).

With regard to the second offense here, the bare circumstance of a small amount of marijuana does not constitute a self-evident proposition that more marijuana or other contraband might be elsewhere in the automobile. The presence of the marijuana alone does not under these facts give rise to an inference that would lead a police officer of ordinary prudence and experience conscientiously to entertain a strong suspicion that additional criminal contraband is present in the trunk of the automobile. The officer knew of no prior history of illegal conduct by these defendants. There was no erratic driving, suspicious gestures, or other incriminating activity observed. Nothing found in the interior of the passenger area or in the conduct of the defendants generated any suspicion of a drug cache in the trunk or of any personal danger to the officer. As the Appellate Division recognized, "the search was purely investigatory and the seizure a product of luck and hunch, a combination of insufficient constitutional ingredients." 163 *N.J.Super.* at 125.

In short, we hold that on these facts there is no rational basis presented for the trooper's conclusion that evidence of a small

amount of marijuana was suggestive of criminal acts beyond the observed possession offense.[4]

It is important to reiterate here that the State bears a heavy burden of demonstrating the probable cause which justifies the search. *Cf. State v. Sims,* 75 *N.J.* 337, 352 (1978). The State must produce facts which lead a trooper to conclude that the search of the entire vehicle was based upon probable cause. In this regard, the State failed to satisfy its burden. The presence of a small amount of marijuana, consistent with personal use, does not provide a trooper with probable cause to believe that larger amounts of marijuana or other contraband are being transported.

In analyzing this problem other courts have found the connecting link between possession of enough drugs for casual personal use on the one hand, and possession of larger amounts of narcotics or other contraband on the other, to be tenuous at best. *Wimberly v. Superior Court, supra; People v. Hines,* 575 *P.*2d 414 (Colo.1978); *State v. Post,* 98 *Idaho* 834, 573 *P.*2d 153 (1978); *People v. Blixt,* 37 *Ill.App.*3d 610, 346 *N.E.*2d 31 (1976); *Commonwealth v. White,* 374 *Mass.* 132, 371 *N.E.*2d 777 (1977), *aff'd by an equally divided court,* 439 *U.S.* 280, 99 *S.Ct.* 712, 58 *L.Ed.*2d 519 (1978); *People v. Strong,* 77 *Mich.App.* 281, 258 *N.W.*2d 205 (1977); *State v. Astalos, supra; State v. Meadows,* 260 *N.W.*2d 328 (N.D.1977); *State v. Orcutt,* 22 *Wash.App.* 730, 591 *P.*2d 872 (1979).

In *Commonwealth v. White, supra,* the highest court of Massachusetts held that neither the possession of a small quantity of

---

[4]While even the casual use of drugs is a criminal offense, the statutes distinguish between the casual user and the dealer of narcotics. Compare *N.J.S.A.* 24:21–20(a)(4) with *N.J.S.A.* 24:21–20(a)(1) and *N.J.S.A.* 24:21–19(b)(2). See also *Wimberly v. Superior Court,* 16 *Cal.*3d 557, 128 *Cal.Rptr.* 641, 547 *P.*2d 417, 427 (1976). And while the parallel may be less than exact, it has been observed by this Court that, in a drug possession case, "[c]onsiderable evidential significance must be afforded the fact that the item in question was heroin." *State v. Brown,* 80 *N.J.* 587, 595 (1979).

marijuana nor the fact that the defendant was thought to be operating under the influence of alcohol sufficiently established a nexus between the criminal activity sought to be investigated and the trunk of the vehicle. 371 *N.E.*2d at 781–82. "We do not believe that the mere fact that a person is apprehended for driving under the influence of an intoxicant is, without more, sufficient to allow a prudent man to conclude that a crime requiring a search of the automobile, its trunk, and the interior of a strongbox located therein has been committed." *Id.* at 782–83.

Similarly, in *People v. Strong, supra,* the search was prompted by the observation of the driver and his passenger drinking beer while driving. The Michigan Court of Appeals found no logical inference from these facts that would give rise to probable cause to believe that evidence of other criminality, apart from the open alcoholic beverage container violation, might be present in the vehicle. "It cannot be said that those who drink beer while driving are likely to possess narcotics, weapons, stolen goods, or any other evidence of criminality unrelated to an open alcoholic beverage violation." 258 *N.W.*2d at 207.

Finally, in *State v. Orcutt, supra,* the Court of Appeals of Washington stressed that the observation of cigarette papers and marijuana residue in the glove compartment of an automobile is "an inherently ambiguous observation" suggesting "the desirability if not the necessity" for a review of all the facts by a neutral and detached magistrate where the exigencies of the circumstances permit. 591 *P.*2d at 876.

We hold that under the facts articulated by him, Trooper Phillips has provided the court with no reasonable basis to credit a strong suspicion that the automobile trunk contained criminally-related matter such as weapons, plunder, or additional contraband. A small amount of marijuana does not alone without other circumstances that suggest participation in drug traffic or possession of more contraband provide justification to extend the zone of the exigent search further than the persons of the

occupants or the interior of the car. Therefore, the fruits of the search of the trunk must be suppressed as they were secured without probable cause in violation of the Fourth Amendment.

Because we conclude that there was no justification for a search beyond the persons of the occupants and the passenger compartment of the automobile, we do not reach the question of whether the warrantless search of a pillow contained within a shopping bag inside an automobile trunk is permissible. See *United States v. Ross*, No. 79–1624 (D.C.Cir. April 17, 1980).

Affirmed.

PASHMAN, J., concurring.

For the reasons stated by Justice Clifford, I fully concur with the result reached today that the search of the automobile's trunk violated the Fourth Amendment. I am in fundamental disagreement, however, with the majority's conclusion that the holding of *Delaware v. Prouse*, 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L. Ed.*2d 660 (1979), should not be accorded limited retroactive effect. *Ante* at 5 n.2. For the reasons stated in my opinion in *State v. Carpentieri*, 82 N.J. 546, 556 (1980) (Pashman, J., dissenting), I believe that the rule of *Prouse* should be applied to all cases pending direct review on the date of the *Prouse* decision, March 27, 1979. I would therefore apply the rule of *Prouse* to the present appeal.

I also write separately to address an issue the majority declines to discuss. The official conduct under scrutiny in this case involved two distinct intrusions into defendants' constitutionally protected privacy: the search of the automobile's trunk and the search of the shopping bag found in the trunk. Regardless of the validity of the first search, I believe that the warrantless search of the shopping bag was unlawful.

In considering the legality of any search or seizure, "[t]he ultimate question * * * is whether one's claim to privacy

from government intrusion is reasonable in light of all the surrounding circumstances." *Rakas v. Illinois*, 439 *U.S.* 128, 152, 99 *S.Ct.* 421, 435, 58 *L.Ed.2d* 387 (1978) (Powell, J., concurring). The reasonableness of a person's asserted privacy is determined by "examin[ing] whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy—that is, precautions customarily taken by those seeking privacy." *Id.* Application of these standards leads to the conclusion that the search of the shopping bag violated the rule of *United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.2d* 538 (1977), and *Arkansas v. Sanders*, 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.2d* 235 (1979).[1]

In *Chadwick* the Supreme Court invalidated a warrantless search of a locked footlocker which had been seized from the trunk of a parked automobile. Although the government did not attempt to base the warrantless search of the footlocker on

---

[1]The search at issue occurred on November 10, 1976, which was prior to the date of decision of either *Chadwick* or *Sanders*. However, neither *Sanders*, which applied the rule of *Chadwick*, nor *Chadwick* itself announced a "new" rule of law.

> *Chadwick* announces no new constitutional doctrine, nor does it broaden any existing exclusionary rule. All the Court did in *Chadwick* was to hold that warrantless searches of luggage absent an exigency are an invasion of a "legitimate privacy interest" and cannot be justified under any of the long established exceptions to the Fourth Amendment warrant requirement. In so holding, the Court stressed that "in this area we do not write on a clean slate." [*United States v. Schleis*, 582 *F.2d* 1166, 1174 (8th Cir. 1978) (*en banc*) (quoting *Chadwick*, 433 *U.S.* at 9, 97 *S.Ct.* at 2482)]

Hence, the rule of *Chadwick* presents no question of retroactivity. See *State v. Carpentieri*, 82 *N.J.* at 564 n.7 (Pashman, J., dissenting). Although my Brother Schreiber believes that *Chadwick* should not be applied retroactively, *post* at 17–18, I am convinced that *Schleis* presents the sounder approach. See *United States v. Stevie*, 582 *F.2d* 1175, 1178 n. 1 (8th Cir. 1978) (*en banc*), cert. den., 443 *U.S.* 911, 99 *S.Ct.* 3102, 61 *L.Ed.2d* 876 (1979); *People v. Minjarcs*, 24 *Cal.3d* 410, 153 *Cal.Rptr.* 224, 591 *P.2d* 514, 519 n. 6 (Sup.Ct.1979), cert. den., 444 *U.S.* 887, 100 *S.Ct.* 181, 62 *L.Ed.2d* 117 (1979).

the "automobile exception" of *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925), "the logic of the *Chadwick* opinion suggests that an individual's interest in keeping private the contents of personal luggage is not lost simply because that luggage is placed in an automobile." *People v. Minjares*, 24 *Cal.* 3d 410, 153 *Cal.Rptr.* 224, 591 *P.2d* 514, 518–519 (Sup.Ct.1979), *cert.* den., 444 *U.S.* 887, 100 *S.Ct.* 181, 62 *L.Ed.2d* 117 (1979). In holding that a warrant was necessary before undertaking a search of the footlocker, the *Chadwick* Court stressed that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." 433 *U.S.* at 13, 97 *S.Ct.* at 2484.

More recently, in *Arkansas v. Sanders, supra,* the Supreme Court applied the *Chadwick* rule to the warrantless search of an unlocked suitcase seized from the trunk of a taxicab. The *Sanders* Court held that the "automobile exception" did not encompass the search of a personal suitcase found in an automobile even though the police had probable cause to believe the suitcase contained contraband. Examining the dual rationale for the "automobile exception" to the warrant requirement—the exigency resulting from mobility and the lesser expectation of privacy surrounding an automobile—the Court concluded "that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile." *Sanders*, 442 *U.S.* at 765 n.13, 99 *S.Ct.* at 2594 n.13, 61 *L.Ed.2d* at 245 n.13.

A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in *Chadwick*, the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. See 433 *U.S.* at 13, 53 *L.Ed.2d* 538, 97 *S.Ct.* 2476. Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general rule there is no greater need

for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

Similarly, a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations. One is not less inclined to place private personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. [*Sanders*, 442 *U.S.* at 763–764, 99 *S.Ct.* at 2593, 61 *L.Ed.*2d at 244–245 (footnotes omitted)]

Turning to the facts of this case, the defendants' privacy interest in the shopping bag is indistinguishable from such interests in the suitcase in *Sanders*, or the footlocker in *Chadwick*. In each case the container's "very purpose" was to "serve as a repository for personal items when one wishes to transport them." *Sanders*, 442 *U.S.* at 764, 99 *S.Ct.* at 2593, 61 *L.Ed.*2d at 245. Like an article of luggage, a shopping bag which conceals its contents from public examination is not one of those containers hypothesized in *Sanders*—"a kit of burglar tools or a gun case"—which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Id.* at 764–765, n. 13, 99 *S.Ct.* at 2593 n. 13, 61 *L.Ed.*2d at 245 n. 13.

Nor is this a case where the contents of the container are open to "plain view," thereby justifying a warrantless search. *Id.* (citing *Harris v. United States*, 390 *U.S.* 234, 88 *S.Ct.* 992, 19 *L.Ed.*2d 1067 (1968) (*per curiam*)). The contraband in the shopping bag was completely covered by a pillow, see *ante* at 16 n.3. Thus the contents of the bag could not be ascertained without probing. The fact, therefore, that this shopping bag was not a "closed" container does not obviate the need for a warrant.

My view that a reasonable expectation of privacy surrounds the contents of a shopping bag finds support in a multitude of decisions that have applied *Chadwick* and *Sanders* to a variety

of packages, containers and parcels.[2]  See, *e. g.*, *United States v. Dien*, 609 *F.*2d 1038 (2d Cir. 1979) (cardboard boxes); *United States v. Bella*, 605 *F.*2d 160 (5th Cir. 1979) (*per curiam* ) (guitar case); *United States v. Calandrella*, 605 *F.*2d 236 (6th Cir. 1979), *cert.* den., 444 *U.S.* 991, 100 *S.Ct.* 522, 62 *L.Ed.*2d 420 (1980) (briefcase); *United States v. Meier*, 602 *F.*2d 253 (10th Cir. 1979) (backpack); *United States v. Johnson*, 588 *F.*2d 147 (5th Cir. 1979) (duffel bag); *People v. Dalton*, 24 *Cal.*3d 850, 157 *Cal.Rptr.* 497, 598 *P.*2d 467 (Sup.Ct.1979), *cert.* den., 445 *U.S.* 946, 100 *S.Ct.* 1345, 63 *L.Ed.*2d 781 (1980) (metal boxes); *People v. Minjares*, 24 *Cal.*3d 410, 153 *Cal.Rptr.* 224, 591 *P.*2d 514 (Sup.Ct. 1979), *cert.* den., 444 *U.S.* 887, 100 *S.Ct.* 181, 62 *L.Ed.*2d 117 (1979) (tote bag); *People v. Bayles*, 76 *Ill.App.*3d 843, 32 *Ill.Dec.* 433, 395 *N.E.*2d 663 (Ct.App.1979) (cloth drawstring whiskey bag); *State v. DeLorenzo*, 166 *N.J.Super.* 483 (App.Div.1979) (duffel bag); *State v. Parker*, 153 *N.J.Super.* 481 (App.Div.1977) (zippered satchel); *State v. DeLong*, 43 *Or.App.* 183, 602 *P.*2d 665 (Ct.App.1979) (camera case); *State v. Marcum*, 24 *Wash.App.* 975, 601 *P.*2d 975 (Ct.App.1979) (athletic bag).

For the foregoing reasons, I would hold that even if there were probable cause for the police to open the trunk in this case,

---

[2]Relying on the recent decision in *United States v. Ross*, No. 79–1624 (D.C.Cir. April 17, 1980), Justice Schreiber appears to accept the view that one cannot have a reasonable expectation of privacy in the contents of a mere paper bag.  *Post* at 22 n.1.  However, I fully agree with Judge Bazelon's opinion in *Ross*, which states in part:

> The simple fact is that in some of our subcultures paper bags are often used to carry intimate personal belongings.  And, the sight of some of our less fortunate citizens carrying their belongings in brown paper bags is too familiar to permit such class biases to diminish protection of privacy.  [*Ross, supra* (Bazelon, J., concurring in part and dissenting in part)]

The degree of constitutional protection available to a person cannot depend on his ability to purchase a more traditional repository for his belongings.

it would have been improper for the police to search the shopping bag. Regardless of its location, whenever the contents of any container or package cannot be ascertained without probing, law enforcement officials must obtain a warrant before they search except when "their actions [can] be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway." *Arkansas v. Sanders*, 442 *U.S.* at 766, 99 *S.Ct.* at 2594, 61 *L.Ed.*2d at 246. Application of this rule supplies an alternative ground for reversing the convictions in this case.

Chief Justice WILENTZ and Justice SULLIVAN join in the views expressed in the first paragraph of this concurring opinion.

SCHREIBER, J., dissenting.

The issue here is whether the evidence and inferences drawn from "the factual and practical considerations of everyday life," *Brinegar v. United States*, 338 *U.S.* 160, 175, 69 *S.Ct.* 1302, 1310, 93 *L.Ed.* 1879, 1890 (1949), support the trial court's conclusion that the search of the trunk of the car was reasonable. The majority repeatedly insists that the existence of a small amount of drugs consistent with casual personal use did not warrant a search of the trunk. It thus misconceives the totality of the circumstances. In my opinion the state trooper had a well-grounded suspicion, *State v. Burnett*, 42 *N.J.* 377, 387 (1964), justifying a search of the trunk when due regard is given to all the factors existing before the trunk was opened.

The following evidence was produced at the hearing on the motion to suppress:

Elmer Phillips, a New Jersey State Police Trooper who had been a police officer for about 13 years, stopped a 1968 Chevrolet convertible for a random check. The car had been traveling south on Route 73 in Mt. Laurel Township toward the New

Jersey Turnpike. As Phillips approached the vehicle the passenger, Lucio Patino, handed over an insurance paper, a motor vehicle registration card and a driver's license to the driver, Guillermo Barriga. Barriga then gave the officer the registration and driver's license. The license was in the name of Lucio Patino and the registration listed Nancy Patino as the owner. The trooper asked Barriga and Patino for other identification, but they had none.

Barriga told the trooper his sister owned the car. At that time Phillips spotted a clear plastic cylindrical container about an inch in diameter and six inches long on the floor of the car. It was half full with green vegetation that he believed was marijuana.

At Phillips' request the defendants got out of the car. The trooper placed them under arrest and patted them down. Barriga then admitted he did not have a driver's license and that the license he had shown the officer belonged to the passenger. When the officer picked up the container of marijuana, he also found a hand-rolled marijuana cigarette. He tried to open the glove compartment, but it was locked. At the officer's request Patino unlocked the glove compartment. It was empty. Phillips asked Patino to open the trunk. There beneath a pillow in a John Wanamaker shopping bag he found over three pounds of cocaine.

Barriga was the only witness for the defendants. He testified that, when he saw the state trooper approaching the car, he told Patino, who was holding the vial of marijuana, to "stash it." Barriga claimed that Patino hid the container under the passenger seat and that was where Phillips found it. Nonetheless, Barriga did not deny that (1) he had no driver's license; (2) he had lied when he claimed Patino's license belonged to him and the owner of the car was his sister; (3) he admitted these falsehoods to the trooper; (4) both Patino and he could not prove their identities; (5) the vial with marijuana was in the

car; and (6) there was also a hand-rolled marijuana cigarette on the floor.

The pattern portrayed by all the circumstances supported a further search of the vehicle by the police. The officer had found contraband in the car. The attempt to avoid any detention by Barriga's palming off another person's driver's license, coupled with Barriga's and Patino's subsequent inability to produce identification, suggested that the vehicle might well have been stolen. Surely, if defendants had more or other controlled dangerous substances, the likelihood was that they would be secreted, as they were, in another part of the car. In *State v. Waltz*, 61 *N.J.* 83 (1972), a police officer found a small bottle with narcotics in the front of a van and received an evasive answer to his inquiry. This Court concluded that "once the officer found what he thought to be narcotics in the bottle probable cause existed to arrest the occupants and search the entire van." *Id.* at 88. In this case, the finding of contraband in the car accompanied by the other suspicious circumstances satisfied the State's burden to prove "by a fair preponderance of the evidence" that probable cause existed for the search. *State v. Slockbower*, 79 *N.J.* 1, 16 n.1 (1979) (Schreiber, J., concurring). See also *State v. Whittington*, 142 *N.J.Super.* 45, 51–52 (App. Div.1976); Saltzburg, "Standards of Proof and Preliminary Questions of Fact," 27 *Stan.L.Rev.* 271, 296–297 (1975).

My Brother Pashman in his concurring opinion urges that even if probable cause existed to search the trunk, the warrantless search of the open shopping bag was proscribed by *Arkansas v. Sanders*, 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.*2d 235 (1979), and *United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.*2d 538 (1977).[1] *Ante* at 16. However, the principle in

---

[1]But see *United States v. Ross*, (D.C. Cir. 1980), wherein the court held that *Sanders* did not proscribe the search of a paper bag found in an automobile trunk, "[b]ecause a paper bag's general vulnerability suggests no reasonable expectation of privacy after its seizure . . . and because the police justifiably believed that *this* paper bag was not being used to store personal

those cases should not be applied retroactively to this case since the search occurred before those decisions. See *State v. Carpentieri*, 82 *N.J.* 546 (1980), and *State v. Howery*, 80 *N.J.* 563 (1979). This is in accord with the majority of federal circuits that have addressed the issue. See *United States v. Calandrella*, 605 *F.*2d 236, 250–252 (6 Cir. 1979), *cert.* den. 444 *U.S.* 991, 100 *S.Ct.* 522, 62 *L.Ed.*2d 420 (1980); *United States v. Choate*, 576 *F.*2d 165, 182 n.20 (9 Cir. 1978), *cert.* den. 439 *U.S.* 953, 99 *S.Ct.* 350, 58 *L.Ed.*2d 344 (1978); *United States v. Berry*, 571 *F.*2d 2, 3 (7 Cir. 1978) (on rehearing), *cert.* den. *sub nom. Richardson v. United States*, 439 *U.S.* 840, 99 *S.Ct.* 129, 58 *L.Ed.*2d 138 (1978); *United States v. Reda*, 563 *F.*2d 510, 511–512 (2 Cir. 1977), *cert.* den. 435 *U.S.* 973, 98 *S.Ct.* 1617, 56 *L.Ed.*2d 65 (1978); *United States v. Montgomery*, 558 *F.*2d 311, 312 (5 Cir. 1977). *Contra, United States v. Schleis*, 582 *F.*2d 1166, 1173–1174 (8 Cir. 1978) (*en banc*). But see *United States v. Dien*, 609 *F.*2d 1038, 1046 (2 Cir. 1979) (applying *Sanders* to a post-*Chadwick* search).

Moreover, there is another disturbing aspect in this case brought about by *R.* 3:5–7(d) which permits a defendant who has pleaded guilty to appeal from a denial of his motion to suppress evidence. Here, after the trial court had denied their motion to suppress the evidence uncovered in the trunk, defendants pleaded guilty. Before their guilty pleas were accepted, they explained that they had been paid to transport over three pounds of cocaine from Philadelphia to New York and were in the process of doing that when apprehended. See *R.* 3:9–2.

*R.* 3:5–7(d), effective January 28, 1977, was adopted for the purpose of relieving congested criminal trial calendars. Report of Supreme Court Committee on Criminal Practice, 99 *N.J.L.J.* 444 (May 20, 1976). I do not believe that the stated administra-

---

items . . . . " See also *State v. Schrier*, 283 *N.W.*2d 338 (Iowa 1979) (knapsack); *Webb v. State*, 373 *So.*2d 400 (Fla.Dist.Ct.App. 1979)) (dictum) (paper bag).

tive goal should be pursued in this manner. When a defendant escapes conviction after he voluntarily has confessed to the court the factual details of his crime, undue light is cast on the regrettable aspect of the exclusionary rule—that "[t]he criminal is to go free because the constable has blundered." *People v. Defore*, 242 *N.Y.* 13, 21, 150 *N.E.* 585, 587 (Ct.App.1926) (per Cardozo, J.) Public confidence in the judicial process is thereby further undermined.

I would not denigrate the effect of a voluntary plea under such circumstances. Philosophically, the cost to society outweighs the "judge-made device to deter future acts of insolence in office . . . ." *State v. Zito*, 54 *N.J.* 206, 210 (1969). Legally, defendants who have pled guilty and acknowledged the factual underpinnings of the plea should be estopped from raising or be deemed to have waived the issue. See *State v. Raymond*, 113 *N.J.Super.* 222, 225–227 (App.Div.1971). For a contrary view see Note, "Conditional Guilty Pleas," 93 *Harv. L.Rev.* 564 (1980). There is no manifest denial of justice in confirming such convictions.

I would reverse the Appellate Division and reinstate the convictions.

Chief Justice WILENTZ and Justices SULLIVAN and PASHMAN concur in result.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, HANDLER and POLLOCK —6.

*For reversal*—Justice SCHREIBER—1.