620 A.2d 1061

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. FREDDY NUNEZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 8, 1993—Decided February 19, 1993.

Before Judges SHEBELL, ARNOLD M. STEIN and CONLEY.

*Zulima V. Farber,* Public Defender, attorney for appellant (*Jane E. Haburay,* Designated Counsel, of counsel and on the brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Michael J. Williams,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Defendant, Freddy Nunez, appeals from the denial of his motion to suppress evidence seized as a result of a warrantless search of the automobile he was driving on the New Jersey Turnpike. He also appeals from the sentence imposed within the bounds of the plea bargain entered into after the denial of the suppression motion. We affirm on both issues.

The only witness at the suppression hearing was the New Jersey state trooper who seized the evidence and arrested the defendant and his passenger. Defendant on appeal does not attack the factual findings of the Law Division. He argues that "[t]he motion to suppress should have been granted, as the damaging of the rear door panels was an invasion of the structural integrity of the car defendant was driving which was not justified by the discovery of two small marijuana cigarettes in the ashtray of the car." The relevant facts as found by the judge following the suppression hearing follow.

In the early morning hours of September 6, 1990, two state troopers were traveling on routine patrol in a southbound direction in a three-lane area of the New Jersey Turnpike in Middlesex County. The trooper who was driving noted a 1980 blue two-door Oldsmobile with Massachusetts license plates in the center lane traveling at approximately seventy miles per hour in a fifty-five per hour mile zone. The trooper observed that the Oldsmobile came upon a slower moving vehicle and stayed behind it at a very close distance for about one-tenth of a mile. The speeding vehicle then suddenly made an untoward turn into the left lane in front of the troopers' vehicle. The trooper concluded that three motor vehicle violations had occurred—speeding, traveling too close, and an inappropriate lane change. He therefore caused the offending vehicle to stop on the right-hand shoulder of the roadway.

The trooper approached the driver's side of the stopped vehicle and his partner approached the passenger's side. As the trooper was asking for the driver's credentials, he noticed through the use of a flashlight that there was, in plain view, a partially consumed bottle of rum on the floor in the rear of the Oldsmobile. He smelled alcohol and noted that the driver had red eyes. Therefore, he had the driver and passenger exit the vehicle. The driver was identified as the defendant, Freddy Nunez.

The driver and his passenger, who were cooperative throughout the entire encounter, were placed at the front of the vehicle. The trooper went to the driver's side door, opened it, and retrieved the bottle. He then began to look further for any additional open containers by going to the opposite side of the vehicle and opening the passenger door. He observed in an open ashtray a small plastic bag containing two marijuana roaches. The trooper then went back to the suspects, showed them what he had found, arrested them for possession of marijuana, and placed them in the State Police car. The trooper then continued to search for any additional open bottles and controlled dangerous substances.

While conducting his search, the trooper noticed a gap of approximately one-half inch under the rear window on the passenger side. This gap was above a panel, approximately six to nine inches wide and twelve to fifteen inches deep. The suppression judge found that the trooper, because of his "training and experience," "ha[d] learned of hidden compartments in vehicles of this approximate age and make" and did not have "any specific intent to go into any potential hidden compartment that would not be visible." "[W]ith the flashlight at that time, [the trooper] did see this opening in the compartment area."

The trooper forced his fingers into the one half-inch gap and continued down to approximately the elbow area. However, the trooper found nothing in the compartment. He then observed the opposite side of the vehicle in the same area and saw the same type of configuration with a one-half inch gap on the corners of the top of the compartment underneath the window. The trooper was unable to open these compartments because a latch system had been installed to secure the panels, which had hinges at the bottom. He put his fingers through the hole into the driver's side gap and ultimately by pushing back the sheet metal of the compartment wall was able to see and retrieve a red plastic shopping bag. Within the shopping bag, the trooper found cashier checks with the defendant's name on them totalling $31,000. Other identification with defendant's picture on it but showing a different name was also found in the compartment. Inside of the shopping bag was a clear plastic bag containing a white, powdery substance. It was found to be cocaine weighing approximately four and one-half ounces.

## I.

The Law Division judge observed that defense counsel was arguing, in effect, that the trooper was lying and had deliberately, with some sort of tool, broken into the compartments and conducted an intrusive search. The judge rejected

this contention, finding that the "trooper came across to me refreshingly honest." The judge found as follows:

> And I am satisfied that he knew that this type of car potentially could have this type of hidden compartment and then he was there, I'm satisfied that visually at that time with the flashlight looking down, that there was sufficient indicia of the top of that compartment being away from the main body of the car that clear at that time suggested to him that that car had been altered, it wasn't that much out, but enough for a trained observer, based on his training and experience, which I find that he had to see this, in effect this and the other compartment of the vehicle, and he went in there and saw nothing at that particular point.

> . . . .

> Thereafter, he ultimately bent back the portion of the car. But, in any event, he goes to the other side of the car and I'm satisfied that based upon my assessment of credibility and weight here, that there was the same type of configuration of that panel at that particular time and he was able to put his finger in there and not see anything at that point until he got about halfway down.

> I'm satisfied under these cases that he did have the right to go further into that container and pull out that which he did.

It was on these facts that the motion judge concluded that the search and seizure was constitutionally permissible. We agree.

We reject defendant's assertion that *State v. Patino*, 83 *N.J.* 1, 414 *A.*2d 1327 (1980), is "directly analogous." In *Patino* a car was stopped for a routine motor vehicle check when the officers observed in plain view a small amount of marijuana. The officers, after doing a patdown of the defendants and a search of the passenger compartment, the area in the immediate control of the defendants, conducted an unjustified search of the trunk of the vehicle and seized approximately three pounds of cocaine. The holding in *Patino* turns on the unreasonableness of attempting to link possession of a small amount of drugs indicating personal use with possession of larger amounts of narcotics. *Id.* at 13, 414 *A.*2d 1327. Thus, the fruits of the search of the trunk were suppressed as being without probable cause because of a lack of nexus between the criminal activity detected and the intrusion into the trunk of the vehicle. *Id.* at 14–15, 414 *A.*2d 1327.

■ The present case is clearly distinguishable in that, as a result of the officer's training and experience, the trooper had reason to believe that the vehicle contained secret compartments. Discovery of a vehicle with secret compartments traveling on a roadway known to be a corridor for interstate transportation of contraband, including drugs, was sufficient for a trained police officer to infer criminal activity in the circumstances presented here. This is true even though an ordinary observer might not have detected the compartments or suspected major drug activity. *See Texas v. Brown*, 460 *U.S.* 730, 742–43, 103 *S.Ct.* 1535, 1543–44, 75 *L.Ed.*2d 502, 514 (1983); *see also* and *cf. State v. Demeter*, 124 *N.J.* 374, 382–85, 590 *A.*2d 1179 (1991).

This search, although undertaken without a warrant, was justified under the automobile exception to the warrant requirement. *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). The State demonstrated through objective factors a fair probability that a well-trained police officer would reach the conclusion that criminal activity and contraband were present considering all of the circumstances. *Demeter, supra*, 124 *N.J.* at 386, 590 *A.*2d 1179. The Law Division, therefore, correctly denied defendant's motion to suppress.

## II.

■ Defendant, in asserting that the sentence imposed of six years is excessive, points to defendant's lack of any criminal record at twenty-three years of age. Defendant states that the court failed to consider the aggravating and mitigating circumstances as required. Defendant further contends that the sentencing judge "clearly violated the sentencing standards set forth in *State v. Roth*, 95 *N.J.* 334, 471 *A.*2d 370 (1984) and the cases which have followed it."

Unquestionably, the sentencing judge's recitation of the appropriate criteria for the imposition of sentence was not a model to be followed. In addition, he did not articulate the

process of weighing the aggravating and mitigating factors which he only briefly referred to. We strongly disapprove of the judge's abridged sentencing method. Nonetheless, we are so clearly persuaded from our independent review of the record that the sentence is correct and does not constitute an error of judgment so as to shock the judicial conscience that we find no reason to remand for resentencing. *Id.* at 364–65, 471 *A.*2d 370.

The order denying the motion to suppress is affirmed, and the judgment of conviction is affirmed.