**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3647-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE FLORES,

    Defendant-Appellant.

_____

Argued November 10, 2025 – Decided November 24, 2025

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 23-03-0339.

Jeffrey S. Farmer argued the cause for appellant (Mazraani & Liguori, LLP, attorneys; Joseph M. Mazraani, of counsel; Jeffrey S. Farmer, of counsel and on the brief).

John J. Santoliquido, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; William Stevens, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this narcotics case, defendant Jose Flores seeks reversal of the trial court's denial of his motion to suppress evidence derived from a warrantless search of his motor vehicle. We affirm.

The pertinent facts are as follows. On June 15, 2022, Police Officers Anthony Colon and Benjamin Batista of the Perth Amboy Police Department were driving on patrol. The officers observed Gerald Toomer, a known narcotics user, pacing back and forth. They then saw Toomer enter a GMC Terrain that had stopped at a red light.

After following the GMC down several side streets, the officers saw the GMC pull into a residential driveway. Toomer got out of the GMC and walked up to a Toyota Highlander that was double-parked in the middle of the street. The Highlander was driven by defendant. The officers then observed what they reasonably suspected to be a hand-to-hand narcotics transaction between Toomer and defendant, in which Toomer handed defendant paper currency in exchange for a white substance wrapped in a plastic bag.

The police activated their squad car's emergency lights. Officer Colon got out and approached the Highlander while Batista proceeded towards Toomer. As the police came nearer, the officers saw Toomer toss a bag that was found to

2

contain cocaine onto the ground. Additionally, the officers observed defendant clutching a handful of currency ($400), which defendant later claimed Toomer had given him for gas.

The police then arrested defendant and Toomer and proceeded to conduct a search of the Highlander. The search was video recorded on Batista's body-worn camera; the video has been supplied to us on appeal.

After the officers searched the vehicle's interior, Officer Batista leaned over from the back passenger seat to the rear cargo area. Batista opened an unlocked cover to a compartment below the cargo area that holds a spare tire and related tools. He retrieved from this compartment two plastic bags containing 94 grams of cocaine, 350 decks of heroin, 295 Alprazolam pills, $582 in currency, and five boxes of sandwich baggies commonly used to package narcotics.

Defendant was charged with various drug offenses, and he moved to suppress the seized contraband. The sole witness at the suppression hearing was Officer Colon, whom the judge found credible. The judge was also supplied with the bodycam footage and the police report of the incident (Exhibit S-1). Counsel submitted the report to us at our request in a Supplemental Appendix.

A-3647-23

Defendant argued to the trial court that the motor vehicle search was invalid because it was not "spontaneous and unforeseeable" under the criteria of State v. Witt, 223 N.J. 409, 450 (2015), as amplified in State v. Smart, 253 N.J. 156, 173-74 (2023). The judge rejected that argument in a written statement of reasons.

Defendant then moved for reconsideration and to supplement the record, arguing the search of the spare-tire compartment was beyond the scope of any asserted probable cause. The judge denied that motion and issued an amended statement of reasons.

Preserving his right to appeal the suppression denial under Rule 3:5-7, defendant pled guilty to one count of third-degree possession of controlled dangerous substances ("CDS"), with the intent to distribute them. N.J.S.A. 2C:35-5(b)(2).

The court sentenced defendant to a four-year prison term. Defendant has not appealed that sentence, but rather solely appeals the suppression denial. He argues that: (1) the vehicle search was not spontaneous and unforeseeable; and (2) the scope of the search should not have extended to the compartment beneath the cargo area.

Specifically, defendant presents these points in his brief:

POINT I

THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED WITHOUT A WARRANT BECAUSE THE FACTS GIVING RISE TO PROBABLE CAUSE WERE NOT SPONTANEOUS OR UNFORESEEABLE.

POINT II

THERE WAS NO BASIS IN THE TESTIMONY WHICH WOULD PERMIT THE OFFICERS TO EXPAND THE SCOPE OF THE SEARCH TO THE TRUNK OF THE VEHICLE.

Having considered these arguments in light of the record and the applicable law, we sustain the trial court's denial of the suppression motion.

Our appellate function in this search-and-seizure context is well established. "The 'standard of review on a motion to suppress is deferential.'" State v. Amang, 481 N.J. Super. 355, 374 (App. Div. 2025) (quoting State v. Nyema, 249 N.J. 509, 526 (2022)). In general, appellate courts must "'uphold the factual findings underlying the trial court's decision so long as those findings are "supported by sufficient credible evidence in the record."'" Nyema, 249 N.J. at 526 (quoting State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007))). "[F]indings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and

correction.'" Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). That said, although factual findings are reviewed deferentially, the trial court's application of the law and "consequences that flow from established facts" are subject to de novo review. State v. Hubbard, 222 N.J. 249, 263 (2015).

The substantive principles of search-and-seizure law are also well settled. The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches by requiring warrants issued upon probable cause. Nyema, 249 N.J. at 527. Under both constitutions, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid. State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Elders, 192 N.J. at 246). To overcome this presumption in New Jersey, the State must show by a preponderance of the evidence that the search falls within one of the well-recognized exceptions to the warrant requirement. Smart, 253 N.J. at 165 (citing State v. Manning, 240 N.J. 308, 329 (2020)).

The relevant warrant exception relied upon by the State in this case is the automobile exception, which was first articulated by the United States Supreme Court in Carroll v. United States, 267 U.S. 132 (1925). The controlling

precedent in this State construing the automobile exception under our State Constitution is State v. Witt, 223 N.J. at 447-50. The Court instructed in Witt that any "searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible." Witt, 223 N.J. at 450. The circumstances giving rise to probable cause must not exist "well in advance of" the search. Smart, 253 N.J. at 174.

The Court elaborated upon the spontaneity and unforeseeability requirements of Witt in Smart, 253 N.J. at 173-74. In Smart, an officer with specialized drug training noticed a car while conducting surveillance in an area known for its narcotics transactions. Smart, 253 N.J. at 160. One month earlier, a confidential informant had given the officer a photograph of a similar car and reported that drugs were being trafficked out of it. Ibid. The officer surveilled the car for thirty minutes, watched a man, woman, and child enter the car, followed them while they got fast food and went to the bank, and then followed them "to a residence where he saw activity consistent with a drug transaction." Id. at 161. Another officer was following the vehicle, and this other officer knew that a concerned citizen had recently reported suspicious activity at that residence. Ibid. After seeing further comings and goings from the car to the residence, the two officers decided they had reasonable, articulable suspicion to

7

perform an investigative stop. Id. at 162. After the driver declined consent to search the vehicle, the officers called for a canine unit. The canine performed an "exterior sniff," resulting in a "hit" which established probable cause. Ibid.

The Court ruled in Smart that the combined circumstances giving rise to probable cause could "hardly be characterized as unforeseeable" and "were anything but spontaneous." Id. at 172-73. In arriving at its decision, the Court cited the involvement of five officers, the almost two hours of surveillance and investigation, and the fact that the police had the tip from the confidential informant at least one month prior to the incident. Ibid.

As the trial court correctly recognized, the factual circumstances here are markedly distinguishable from those in Smart. Although Officer Colon was on narcotics patrol and ended up following Toomer, a person known for narcotics use, the officer was not acting on any prior tip or information that would have been actionable before spotting Toomer.

After Officer Colon recognized Toomer, he watched him for only a few minutes before witnessing him get into the Highlander being driven by defendant. Colon then spontaneously followed the Highlander for less than two miles, and almost immediately observed an apparent hand-to-hand drug transaction when the Highlander reached its destination. Probable cause arose

at the moment of that transaction; the officers did not "sit" on it. Id. at 163. As such, the trial court correctly found that the criteria of spontaneity and unforeseeability required by Witt and Smart had clearly been met.

In addition, it is uncontested the police had probable cause that a CDS offense had just been committed once they observed the apparent hand-to-hand transaction. They also had probable cause to believe incriminating evidence would be found in the vehicle involved in that transaction. The core element of probable cause "is a well-grounded suspicion that a crime has been or is being committed." State v. Nishina, 175 N.J. 502, 515 (2003) (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). "Probable cause exists where, given the totality of the circumstances, '"there is a fair probability that contraband or evidence of a crime will be found in a particular place."'" State v. Wilson, 478 N.J. Super. 564, 577-78 (App. Div. 2024) (quoting State v. Moore, 181 N.J. 40, 46 (2004) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983))).

We now turn to defendant's second argument challenging the scope of the Highlander search. As a general principle, "[t]he scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983). Depending on the facts, those places may include

containers within a motor vehicle, as it has long been recognized that the automobile exception extends to containers in the vehicle that could be concealing the object of the search. See Wilson, 478 N.J. at 578-79 (quoting United States v. Ross, 456 U.S. 798, 825 (1982). ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search")); see also State v. Patino, 83 N.J. 1, 1980 (disallowing a warrantless search of a vehicle's trunk under the distinctive facts presented).

The constitutional analysis regarding scope thus hinges upon what is "the object of the search" as to which there is probable cause. Wilson, 478 N.J. at 572. This point was illustrated by the Court in State v. Cohen, 254 N.J. 308 (2023). In that case, a confidential informant had provided police officers with two license plate numbers of cars that had purportedly been used for weapons trafficking. Id. at 313-14. Upon seeing one of those cars, a state trooper chose to follow it and pull the vehicle over for multiple traffic citations. Id. at 314. The trooper testified to smelling a strong odor of raw marijuana and observing a bit of what he suspected were marijuana crumbs on defendant's beard and shirt. Id. at 314-15. The officer discovered no marijuana after patting down defendant and his passenger but discovered a spent shell casing in the glove compartment.

Id. at 315. He then opened the vehicle's hood and searched the engine compartment, where he found guns, then moved the search to the trunk, where he found a duffel bag containing bullets. Ibid.

Given those facts, the Court concluded in Cohen that the officer did not have probable cause to search the engine compartment of the trunk and had thus exceeded the scope of the automobile exception. Id. at 324. The Court acknowledged the officer did have probable cause to search the entirety of the passenger compartment, but once that initial search did not reveal marijuana — the only suspected object of the search —the police "indiscriminately expanded the search to separate areas of the vehicle . . . despite no unique facts that indicated raw marijuana was in either the engine compartment or trunk." Ibid. The Court found that, although the officer's initial search of the passenger compartment was permissible, the expansion of the search was not. Ibid.

Notably, the Court clarified its holding in Cohen as follows:

> This holding in no way suggests that areas within the interior of the car would require separate probable cause findings in order to conduct a warrantless search. We are not dividing up the interior of vehicles such that an officer would need to establish different or additional probable cause to search the front seat as opposed to the back seat, for example. Pursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior.

11

> We are also <u>not suggesting that the warrantless search of a trunk or engine compartment will always require separate probable cause findings</u>. Instead, we reiterate that a warrantless search of a car "must be reasonable in scope" and "strictly tied to and justified by the circumstances which rendered its initiation permissible." <u>Patino</u>, 83 N.J. at 10-11. However, a generalized smell of raw marijuana does not justify a search of every compartment of an automobile.
>
> [<u>Id.</u> at 327-28 (emphasis added).]

In her amended statement of reasons denying defendant's motion to suppress, the trial judge applied the principles of <u>Cohen</u> and <u>Patino</u> in concluding that the search of the Highlander's cargo area was "reasonable in scope" and "strictly tied to and justified by the circumstances which rendered its initiation possible." The cargo area is part of the passenger compartment and may be reached from the interior of the vehicle.

The circumstances of the present case also differ from the facts in <u>Cohen</u> in that, here, the police had directly witnessed a hand-to-hand narcotics transaction a few minutes prior to conducting a search of the Highlander. Furthermore, they had probable cause to believe that a supply of additional CDS for distribution or other contraband would be found or hidden within the vehicle, beyond what a marijuana smoker would possess for mere personal use, which was not a justification discussed in the Court's opinion in <u>Cohen</u>. The present

situation additionally contrasts with what occurred in <u>Patino</u>, in which the conduct of the defendants failed to generate any reason to believe that a drug cache would be located in the vehicle's trunk. <u>See</u> 83 N.J. at 14-15.

For these many reasons, the officers in this case did not exceed the constitutionally permissible scope of the automobile exception. We therefore affirm the trial court's decision.

To the extent we may not have addressed them, we reject the remainder of defendant's arguments as lacking in merit. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division