SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## State v. Cornelius C. Cohen (A-50-21) (084493)

**Argued January 4, 2023 -- Decided June 22, 2023**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the odor of marijuana in a vehicle authorizes a search of the engine compartment and trunk under the automobile exception to the warrant requirement.

On January 17, 2016, after receiving a "be on the lookout" (BOLO) email based on a tip from a confidential informant (CI) that defendant Cornelius Cohen would be traveling to the Carolinas to pick up firearms and bring them back to New Jersey to sell, State Trooper Charles Travis noticed one of the cars described in the BOLO email traveling northbound on the New Jersey Turnpike. Trooper Travis pulled the vehicle over for traffic violations.

When Trooper Travis approached the vehicle, he noticed multiple air fresheners hanging from the rearview mirror. The trooper asked defendant and Najah Baker, who was a passenger in the vehicle, for their credentials. Trooper Travis testified that he smelled "a strong odor of raw marijuana" in the vehicle during the stop and observed "greenish-brown vegetation" on the driver's beard and shirt, which the trooper identified as "shake," or "the tail-end of marijuana." Trooper Travis told a colleague who had followed him to the traffic stop that he smelled raw marijuana and was going to remove defendant and Baker from the car. With defendant and Baker handcuffed and in separate patrol cars, Trooper Travis began a search of the vehicle. He first searched the passenger compartment, where he recovered from the glove compartment a 9mm spent shell casing. The search of the passenger compartment did not reveal any marijuana.

Trooper Travis did not apply for a search warrant based on the information supplied by the CI, but instead proceeded to the front of the vehicle where he opened the vehicle's hood and searched the engine compartment. There he found a rifle and a revolver. Trooper Travis then moved his search to the trunk, where he found a duffle bag containing hollow point bullets. No marijuana was recovered from the car, defendant, or Baker.

1

Defendant moved to suppress the evidence seized during the car search. The trial court denied the motion, although the judge expressed that he was troubled by the "concept of how far [the courts should] tolerate the subjective testimony of the smell of raw marijuana" when there is "no other evidence to suggest marijuana was ever in the car." Notwithstanding those concerns, the trial court held that "[t]he odor of raw marijuana emanating from a vehicle without a detectible pinpoint establishes probable cause to search the entire vehicle," citing State v. Kahlon, 172 N.J. Super. 331 (App. Div. 1980). Defendant subsequently entered a conditional guilty plea to one count of unlawful possession of a weapon.

The Appellate Division affirmed the court's ruling and reliance on Kahlon to justify extending the search. The Court granted certification. 251 N.J. 14 (2022).

**HELD:** Expanding the search to the engine compartment and trunk went beyond the scope of the automobile exception. Although the trooper smelled marijuana in the passenger compartment of the car, his initial search yielded no results and provided no justification "to extend the zone of the . . . search further than the persons of the occupants or the interior of the car." State v. Patino, 83 N.J. 1, 14-15 (1980). As a result, the seized evidence should be suppressed.

1. Pursuant to the automobile exception to the warrant requirement, when the police have probable cause to believe that a vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous, law enforcement may search the vehicle without first obtaining a warrant. New Jersey courts have recognized that the smell of marijuana constitutes probable cause that a criminal offense has been committed and additional contraband might be present. But a search that is reasonable at its inception may nonetheless violate the Constitution by virtue of its intolerable intensity and scope. (pp. 12-13)

2. The Court reviews decisions in which it has endeavored to define the bounds of a legal search under the automobile exception based on the suspected presence of marijuana. In Patino, a search of the trunk following the discovery of a plastic container full of "green vegetation" and a marijuana cigarette in a vehicle's interior exceeded the parameters of the automobile exception. 83 N.J. at 12-13. The Court noted that the officer's discovery of only "a small amount of marijuana, consistent with personal use, does not provide [police] with probable cause to believe that larger amounts of marijuana or other contraband are being transported." Id. at 13. In State v. Guerra, on the other hand, the officer's determination that the apparent intensity of the marijuana odor in a vehicle he had pulled over for a broken taillight could indicate only an amount too large to be contained in the bag he saw in the car's interior -- combined with the observed presence of a substantial weight in the trunk, which was "hanging low" -- justified a search of that space, where the trooper discovered 176.5 pounds of marijuana. 93 N.J. 146, 148-52 (1983). (pp. 13-16)

2

3.  In <u>Kahlon</u>, which was decided prior to <u>Patino</u>, an officer searched the interior compartment of the defendant's vehicle and found a partially burned cigarette and a clear plastic bag containing half an ounce of marijuana.  172 N.J. Super. at 336.  The officer then entered the backseat where he noticed a "very heavy odor of unburned marijuana."  <u>Id.</u> at 337.  Having found no additional marijuana in the backseat, the officer opened the trunk where he found 30 pounds of marijuana.  <u>Ibid.</u>  The Appellate Division held that the officer had probable cause to search the trunk in light of his "inability to pinpoint the source of the smell of unburned marijuana" that seemed to emanate from the rear of the car "together with the marijuana already found in the car."  <u>Id.</u> at 338.  In sum, cases in which New Jersey courts have upheld searches of areas beyond the passenger compartment have involved facts beyond simply detecting the smell of marijuana from the interior of the car.  (pp. 16-18)

4.  Here, after initiating the traffic stop of the car described in the BOLO alert, Trooper Travis reported "a strong odor of raw marijuana" in the vehicle as well as "greenish-brown vegetation" on the driver's beard and shirt.  At that point, he had a reasonable belief that a criminal offense had been committed and that additional contraband might be present on defendant's person and in the passenger compartment. The initial search of defendant, Baker, and the passenger compartment was therefore valid.  After the search of the car's interior did not reveal marijuana, however, the police expanded the search to separate areas of the vehicle despite no unique facts that indicated raw marijuana was in either the engine compartment or trunk.  That expansion went beyond the scope of the automobile exception, and any information from the BOLO could not contribute to a probable cause determination based on the smell of marijuana.  Comparing in detail the facts of this case to those of prior cases, the Court finds that the searches of the engine compartment and trunk here were unlawful and that the evidence seized from them must be suppressed.  (pp. 18-23)

5.  The Court's holding does not suggest that areas within the interior of a car would require separate probable cause findings to conduct a warrantless search.  Nor does it suggest that the warrantless search of a trunk or engine compartment will always require separate probable cause findings, although a generalized smell of raw marijuana does not justify a search of every compartment of a car.  Finally, although the search here predated the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, the Court anticipates that cases involving the automobile exception and probable cause to search a vehicle based solely on the smell of marijuana will likely be few and far between going forward.  (pp. 23-25)

**REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion.**

3

# SUPREME COURT OF NEW JERSEY

## A-50 September Term 2021

## 084493

State of New Jersey,

Plaintiff-Respondent,

v.

Cornelius C. Cohen,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| January 4, 2023 | June 22, 2023 |

Raymond L. Hamlin argued the cause for appellant
(Hunt, Hamlin & Ridley, attorneys; Raymond L. Hamlin,
of counsel and on the briefs).

Sarah C. Hunt, Deputy Attorney General, argued the
cause for respondent (Matthew J. Platkin, Attorney
General, attorney; Sarah C. Hunt, of counsel and on the
briefs).

Austin J. Howard, Assistant Deputy Public Defender,
argued the cause for amicus curiae Public Defender of
New Jersey (Joseph E. Krakora, Public Defender,
attorney; Austin J. Howard, of counsel and on the brief).

Alexander Shalom argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,

1

attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Dillon J. McGuire argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin, of counsel and on the brief, and Dillon J. McGuire, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case, we consider whether the odor of marijuana in a vehicle authorizes a search of the engine compartment and trunk under the automobile exception to the warrant requirement.

After receiving a tip from a confidential informant that defendant Cornelius Cohen regularly traveled out of state to acquire firearms for subsequent sale in New Jersey, the New Jersey State Police issued a "be on the lookout" notice for two vehicles defendant was known to use. After spotting one of the cars on the New Jersey Turnpike, State Trooper Charles Travis followed the vehicle for a few miles before initiating a traffic stop for failure to maintain the lane and a suspected toll violation.

During the stop, Trooper Travis detected the smell of raw marijuana while speaking with defendant at the window of the vehicle. After searching the passenger compartment and finding no marijuana, the trooper continued his search by opening the hood of the car. He discovered a rifle and a revolver

2

nestled in the vehicle's engine compartment. Trooper Travis then opened the trunk and found a bag containing hollow point bullets. Despite Trooper Travis's detection of the odor of marijuana, no marijuana was found.

Defendant moved to suppress the items seized during the warrantless search and the trial court denied his motion. Thereafter, defendant pled guilty to one count of second-degree unlawful possession of a weapon and was sentenced to five years' imprisonment. The Appellate Division affirmed defendant's conviction and sentence, finding no error in the trial court's admission of the evidence seized from the engine compartment and trunk.

We granted certification limited to the issue of whether officers were authorized to search the car's engine compartment and trunk based on the odor of marijuana in the vehicle.

As detailed below, we reverse the Appellate Division's judgment and find that the seized evidence should be suppressed.

## I.

## A.

We rely on the testimony from the suppression hearing for the following factual summary.

In January 2016, Detective Joseph Czech of the New Jersey State Police received a tip from a confidential informant (CI) that defendant often traveled

3

to the Carolinas to pick up firearms and bring them back to New Jersey to sell. The CI provided officers with defendant's name and physical description. The CI further provided the license plate numbers to the following two vehicles defendant allegedly used to transport weapons: a gray Infiniti G35 registered to defendant, and a black Honda Civic registered to Najah Baker.

Later that month, the same CI advised Detective Czech that defendant and an associate would be traveling to one of the Carolinas on January 15, and planned to return to New Jersey on January 17. In response to that information, Detective Czech entered the license plates for both vehicles into various law enforcement databases so that he would be notified if the plates were picked up by a license plate reader or checked by another officer. Detective Czech's supervisor, Detective Sergeant John Cipot, sent out a "be on the lookout" (BOLO) email to State Police stations on January 14, asking officers to notify Detective Czech if they spotted either of the cars.

On January 17, State Trooper Charles Travis noticed the black Honda Civic described in the BOLO email traveling northbound on the New Jersey Turnpike. Trooper Travis testified that he followed the vehicle for about two miles and saw the driver repeatedly fail to maintain his lane. According to his testimony, as the car passed through a toll plaza, the trooper saw the EZ-Pass indicator display an "unpaid toll" message. Trooper Travis called Detective

4

Czech -- as instructed by the BOLO email -- and told Detective Czech that he was about to pull the vehicle over for traffic violations.

When Trooper Travis approached the vehicle, he noticed multiple air fresheners hanging from the rearview mirror. The trooper asked defendant and Baker, who was a passenger in the vehicle, for their credentials -- license, registration, and car insurance information. Defendant told the trooper that he and Baker were returning from Washington, D.C., where they had been visiting friends for the weekend.

Trooper Travis testified that he smelled "a strong odor of raw marijuana" in the vehicle during the stop. Trooper Travis also observed "greenish-brown vegetation" on the driver's beard and shirt, which the trooper identified as "shake," or "the tail-end of marijuana." In questioning defendant and Baker, Trooper Travis testified that he asked defendant whether he smoked cigarettes because Trooper Travis "wanted to make sure it wasn't tobacco."

Trooper Travis told a colleague who had followed him to the traffic stop that he smelled raw marijuana and was going to remove defendant and Baker from the car. During a search of defendant's person, Trooper Travis found a cigar and a keychain with an image of a marijuana leaf but did not discover any actual marijuana.

5

With defendant and Baker handcuffed and in separate patrol cars, Trooper Travis began a search of the vehicle. He first searched the passenger compartment, where he recovered from the glove compartment a plastic bag containing two shot glasses. One of the shot glasses contained a 9mm spent shell casing. The search of the passenger compartment did not reveal any marijuana.

Trooper Travis did not apply for a search warrant based on the information supplied by the CI, but instead proceeded to the front of the vehicle where he opened the vehicle's hood and searched the engine compartment. There he found a black canvas bag near the passenger side of the car "along the firewall of the engine." Trooper Travis found a second, smaller bag against the engine's firewall on the driver's side. The first bag contained a rifle; the second a revolver. Trooper Travis then moved his search to the trunk, where he found a duffle bag containing hollow point bullets. No marijuana was recovered from the car, defendant, or Baker.

B.

On October 17, 2016, a grand jury returned a three-count indictment charging defendant with second-degree unlawful possession of a weapon, third-degree possession of a weapon, and fourth-degree possession of a prohibited device.

Defendant filed three pre-trial motions: a motion to suppress the firearms and ammunition seized during the car search, a motion to suppress his on-scene statement to police, and a motion to reveal the identity of the confidential informant. The trial judge held a four-day hearing on those motions. Only the motion to suppress the evidence seized from the car is relevant to this appeal.

Much of the suppression hearing focused on whether Trooper Travis actually smelled marijuana, and whether the search was based on unforeseeable and spontaneous circumstances as required by State v. Witt, 223 N.J. 409 (2015), given the BOLO that had been issued three days prior to the stop. Trooper Travis testified that he smelled raw marijuana and explained, based on his experience, that he searched the car hood because marijuana "can fit in the engine compartment. And what will happen is it will get sucked into . . . the air vents." Baker testified that when they were stopped, neither she nor defendant had consumed marijuana that day or had marijuana in their possession.

The trial court denied defendant's motion to suppress, although the judge expressed that he was troubled by the "concept of how far [the courts should] tolerate the subjective testimony of the smell of raw marijuana" when there is "no other evidence to suggest marijuana was ever in the car."

7

Notwithstanding those concerns, the trial court, in a written decision, credited Trooper Travis's testimony and concluded that the search was lawful, so the seized evidence was admissible. Based on the dashcam video of the stop, the trial court found that a second officer corroborated Trooper Travis's smell of marijuana. Citing State v. Kahlon, 172 N.J. Super. 331 (App. Div. 1980), the trial court held that "[t]he odor of raw marijuana emanating from a vehicle without a detectible pinpoint establishes probable cause to search the entire vehicle."

Defendant subsequently entered a conditional guilty plea to one count of second-degree unlawful possession of a weapon and was sentenced to five years' imprisonment with 42 months' parole ineligibility. Defendant's sentence was stayed pending appeal.

## C.

On appeal, defendant argued that the trial court incorrectly interpreted Kahlon to stand for the proposition that the smell of marijuana permits a search of the entire vehicle. In an unpublished opinion, the Appellate Division affirmed the trial court's ruling and reliance on Kahlon to justify extending the search from the passenger compartment to the hood and trunk of the car.

D.

We granted defendant's petition for certification limited to the issue of whether officers had probable cause to search the vehicle's engine compartment and trunk under the automobile exception to the warrant requirement. 251 N.J. 14, 14-15 (2022).

We also granted the applications of the Office of the Public Defender (OPD), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the American Civil Liberties Union of New Jersey (ACLU) to participate as amici curiae.

II.

A.

Defendant argues that the smell of marijuana did not provide police with probable cause to search the engine compartment and trunk of his vehicle. Defendant contends that the trial court and the Appellate Division unfairly broadened the holding of Kahlon. Defendant distinguishes this case from Kahlon by highlighting the fact that no marijuana was found in the interior of his car and insists the State did not put forth "any facts supporting the suspicion of a drug cache in the trunk or the hood of the automobile." Defendant further argues that the "shake" of dried marijuana leaves are, at best, indications that Cohen might have a small amount of marijuana for

personal use which is not enough to justify expanding the search to the car's trunk or engine compartment under State v. Patino, 83 N.J. 1, 13 (1980).

Several amici support defendant's position. The OPD argues that, in pre-legalization cases, the odor of marijuana provides probable cause to search only the areas of a vehicle from which the smell seems to emanate and insists this Court's jurisprudence on the automobile exception has been faithful to that specificity requirement. The ACLU argues that the seized evidence must be suppressed because the smell of marijuana does not authorize invasive searches beyond the passenger compartment of a vehicle. The ACDL expresses concern that, under the Appellate Division's rule, an officer could falsely claim to smell marijuana to enable a full-scale automobile search. The ACDL urges this Court to suppress any non-drug evidence seized in a search initiated by smell and prevent any officer with knowledge of an existing investigation from searching a subject's car without a warrant.

## B.

The State urges the Court to affirm the Appellate Division and hold that Trooper Travis had probable cause to search the engine compartment and trunk. Comparing this case to State v. Guerra, 93 N.J. 146 (1983), the State argues that Trooper Travis had probable cause to expand his search after ruling out all other possible sources of the odor.

10

III.

A.

Our standard of review on a motion to suppress is deferential, and we "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We defer "to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting Elders, 192 N.J. at 244). This Court ordinarily will not disturb the trial court's factual findings unless they are "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting Elders, 192 N.J. at 244). "A trial court's legal conclusions, however, 'and the consequences that flow from established facts,' are reviewed de novo." Ahmad, 246 N.J. at 609 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

B.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect citizens from unreasonable searches and seizures. Warrantless searches are presumptively unreasonable

11

under both constitutions. See State v. Goldsmith, 251 N.J. 384, 398 (2022). Before conducting a search, the police must obtain a warrant from a neutral judicial officer "unless the search falls within a recognized exception to the warrant requirement." State v. Camey, 239 N.J. 282, 298 (2019). "When no warrant is sought, the State has the burden to demonstrate that '[the search] falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Pineiro, 181 N.J. 13, 19-20 (2004) (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)). The State must show "by a preponderance of the evidence that there was no constitutional violation." Id. at 20 (quoting State v. Wilson, 178 N.J. 7, 13 (2003)).

The exception to the warrant requirement at issue in this case is the automobile exception. This Court has held that under our State Constitution, "when the police have probable cause to believe that [a] vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous," law enforcement may search the vehicle without first obtaining a warrant. Witt, 223 N.J. at 447. The automobile exception is premised on three rationales: (1) a vehicle's inherent mobility; (2) "the lesser expectation of privacy in an automobile compared to a home"; and (3) "the recognition that a Fourth Amendment

12

intrusion occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant." Id. at 422-23.

Our courts have long recognized that the smell of marijuana "constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)). That said, "a search which is reasonable at its inception may [nonetheless] violate the Fourth Amendment by virtue of its intolerable intensity and scope." Terry v. Ohio, 392 U.S. 1, 18 (1968); accord Patino, 83 N.J. at 10-11. Although both federal and state constitutional law recognize an automobile exception to the warrant requirement, "it is well known that our State Constitution 'provides greater protection against unreasonable searches and seizures than the Fourth Amendment.'" See State v. Smart, 253 N.J. 156, 165-66 (2023) (quoting State v. Carter, 247 N.J. 488, 504 (2021), and discussing numerous examples). This Court has recognized that "[g]reater individual protections exist for automobile searches, too" under our State Constitution. Id. at 166.

In prior decisions, this Court has endeavored to define the bounds of a legal search under the automobile exception based on the suspected presence

13

of marijuana. In <u>Patino</u>, after pulling the defendant's vehicle over, a state trooper noticed a clear plastic container full of "green vegetation" on the floor near the front seat. 83 N.J. at 5. The trooper searched the interior of the vehicle and recovered a marijuana cigarette. <u>Ibid.</u> The trooper continued searching, examining the glove compartment and ashtray, but found nothing further. <u>Id.</u> at 5-6. Finally, the trooper searched the trunk and discovered cocaine. <u>Id.</u> at 6.

This Court held that the search of the trunk exceeded the parameters of the automobile exception. <u>Id.</u> at 12-13. The Court noted that the officer's discovery of only "a small amount of marijuana, consistent with personal use, does not provide [police] with probable cause to believe that larger amounts of marijuana or other contraband are being transported." <u>Id.</u> at 13. The Court concluded that the search was unlawful because, under the automobile exception, not only must an officer have probable cause to believe that contraband is present in the vehicle, "but the search must be reasonable in scope" and must be "strictly tied to and justified by the circumstances which rendered its initiation permissible." <u>Id.</u> at 10-11 (quoting <u>Terry</u>, 392 U.S. at 19). The Court noted that a search that is initially reasonable "may become unreasonable because of its intolerable intensity and scope." <u>Ibid.</u> (citing <u>Terry</u>, 392 U.S. at 18). Accordingly, the Court held, officers must "provide

14

justification to extend the zone of the exigent search further than the persons of the occupants or the interior of the car." Id. at 14-15.

Three years later, the Court held that an officer lawfully extended the scope of a search to the vehicle's trunk after detecting the odor of marijuana. Guerra, 93 N.J. at 150. In Guerra, the defendant was pulled over for a broken taillight. Id. at 148-49. The trooper detected a "strong odor of raw unburned marijuana emanating from the interior of the car" and noticed a small "suitcase which he concluded could not have been the source of the odor." Id. at 149. The trooper remarked that the car was "hanging low in the trunk" and expressed his intention to look inside the trunk. Ibid. Upon searching the trunk after obtaining a telephonic search warrant, the trooper discovered 176.5 pounds of marijuana. Id. at 149-50. The motion court found that the search was justified under the automobile exception "because the smell of 'the marijuana, coupled with the vehicle riding low certainly constituted probable cause to search the trunk.'" Id. at 150. The Appellate Division reversed, determining that insufficient grounds existed for the issuance of a telephonic, as opposed to a written, warrant. Ibid.

The primary question in Guerra before this Court was whether the officers properly obtained a telephonic warrant prior to searching the vehicle at police headquarters. Id. at 148. While the Court agreed with the Appellate

15

Division that the telephonic warrant was defective, we ultimately held that the search was nonetheless permissible under the automobile exception. Id. at 151-52. The Court found that after making a lawful stop, "[t]he troopers then detected a strong odor of marijuana which, as found by the trial court, could not have emanated from the small suitcase in the car's interior." Id. at 150. In contrast to the setting of Patino, in which the confirmed presence of a quantity of marijuana consistent with personal use did not justify the search of a car trunk, Guerra arose from the officer's determination that the apparent intensity of the marijuana odor could indicate only an amount too large to be contained in the bag in the car's interior -- combined with the observed presence of a substantial weight in the trunk -- justified a search of that space. Accordingly, the Guerra Court held that the officer had probable cause to search the trunk. Ibid.

The Appellate Division has similarly addressed the extent to which the odor of marijuana provides probable cause to extend the scope of a vehicle search beyond the passenger compartment under the automobile exception. In Kahlon, which was decided prior to this Court's decision in Patino, after pulling a motorist over, the officer smelled marijuana and the defendant admitted to smoking marijuana. 172 N.J. Super. at 336. The officer searched the interior compartment of the vehicle and found a partially burned cigarette

and a clear plastic bag containing half an ounce of marijuana. Ibid. The officer then entered the backseat where he noticed a "very heavy odor of unburned marijuana." Id. at 337. Having found no additional marijuana in the backseat, the officer opened the trunk where he continued to smell the heavy odor of marijuana and found a cardboard box from which the smell of unburned marijuana emanated. Ibid. The officer opened a bag in the box and found 30 pounds of marijuana inside. Ibid.

The trial court suppressed the marijuana found in the trunk, but the Appellate Division reversed, holding that the search was lawful. Id. at 338. The Appellate Division held that the officer's

> inability to pinpoint the source of the smell of unburned marijuana while in [the rear interior] of the automobile although it appeared to emanate from the rear of the vehicle, together with the marijuana already found in the car, reasonably could leave him to conclude, as he did, that the odor came from the car's trunk and accordingly established probable cause to search the trunk for such marijuana.

> [Ibid.]

In State v. Sarto, the Appellate Division upheld the search of a trunk when "the strong odor of unburned marijuana gave police probable cause" because the odor "could not have emanated from the small plastic bag found in the vinyl bag" in the passenger compartment. 195 N.J. Super. 565, 574-75 (App. Div. 1984). Officers discovered a knife in plain view during a vehicle

17

stop and subsequently arrested the defendant for a weapons violation.  Id. at 567.  While retrieving the knife, the officer detected a strong odor of marijuana and found a partially opened clear plastic bag containing marijuana.  Ibid.  Citing to Guerra and Kahlon, the Appellate Division held that the strong odor of unburned marijuana "gave police probable cause to search the trunk for evidence of contraband."  Id. at 574.  Similar to Kahlon, the officers in Sarto initially found marijuana in the passenger compartment prior to extending the search to the trunk, and similar to Guerra, the strong odor of marijuana that remained after that discovery could not be explained by the contents of the passenger compartment of the vehicle.  Ibid.

In sum, cases in which our courts have upheld searches that extended to the trunk or other areas beyond the passenger compartment have involved facts indicating something more than simply detecting the smell of marijuana from the interior of the car.

## IV.

Applying those principles and Article I, Paragraph 7 of the New Jersey Constitution to this case, we find that the officers did not have probable cause to search the engine compartment or the trunk and thus exceeded the scope of the automobile exception to the warrant requirement.

18

Upon noticing the black Honda Civic described in the BOLO alert that was issued after the CI's firearms trafficking tip, Trooper Travis followed defendant's vehicle for about two miles. After initiating a traffic stop, Trooper Travis reported detecting "a strong odor of raw marijuana" in the vehicle as well as "greenish-brown vegetation" on the driver's beard and shirt. At that point, Trooper Travis had a reasonable belief "that a criminal offense had been committed and that additional contraband might be present" on defendant's person and in the passenger compartment. See Walker, 213 N.J. at 290. We therefore find that the initial search of defendant, Baker, and the passenger compartment was valid under the automobile exception because the officer had probable cause to initiate that search.

After the search of the car's interior did not reveal marijuana, however, the police indiscriminately expanded the search to separate areas of the vehicle -- beyond the compartment from which Trooper Travis initially detected the smell -- despite no unique facts that indicated raw marijuana was in either the engine compartment or trunk. After searching the passenger compartment, Trooper Travis then searched under the hood of the car, an arguably unlikely locale for storing personal items in a vehicle, including illegal narcotics. Within the engine compartment, the trooper found a bag containing a rifle and a second bag containing a revolver. Trooper Travis next searched the trunk,

19

where he discovered a bag containing hollow point bullets. No marijuana was found anywhere in the car, or on defendant or Baker.

We hold that when Trooper Travis expanded his search to the engine compartment of the car, he went beyond the scope of the automobile exception. Although he smelled marijuana in the passenger compartment of the car, the trooper's initial search yielded no results and provided no justification "to extend the zone of the . . . search further than the persons of the occupants or the interior of the car." See Patino, 83 N.J. at 14-15. Had the smell of raw marijuana emanated from under the hood of the vehicle, that could have justified expanding the search. Prior cases from this Court and the Appellate Division that upheld searches beyond the interior of the vehicle illustrate that something more than just a general smell of marijuana underpinned the holding in those cases. Similarly, had Trooper Travis indicated that the smell was of such magnitude as to necessarily emanate from a large cargo space such as a trunk, the question of probable cause would have been closer. Here, however, Trooper Travis made no such observation that the marijuana smell was stronger in certain areas of the car and provided no reasoning for expanding the search to the hood and the trunk.

This holding is consistent with this Court's and the Appellate Division's decades-old precedent. In Patino, although not a case involving the odor of

20

marijuana, this Court invalidated the search of a vehicle's trunk after the officer actually found a marijuana cigarette and a plastic container of "green vegetation" in the interior of the vehicle. 83 N.J. at 5, 11-13. In Kahlon, the Appellate Division upheld the search of the trunk after the officer (1) smelled marijuana upon pulling the car over; (2) the defendant admitted to smoking marijuana; (3) the officer found a plastic bag containing half an ounce of marijuana and a marijuana cigarette in the interior compartment; and (4) the officer detected a very strong odor of unburned marijuana in the area of the backseat. 172 N.J. Super. at 335-37. Similarly, in Sarto, officers also found marijuana in the passenger compartment before extending the search to the trunk. 195 N.J. Super. at 567-68. In those cases, although the extended search was invalidated in one matter and upheld in the others, the facts supporting probable cause to search the trunk were much stronger than the facts in this case, with Trooper Travis only generally smelling "a strong odor of raw marijuana" in the vehicle's interior.

Although the State equates this case to Guerra, the circumstances of the search in Guerra, as well as the arguments considered by the Court, are distinguishable. Unlike this case, in Guerra, the officers obtained a search warrant prior to searching the trunk of the car; this Court granted certification after the Appellate Division found that warrant to be invalid. 93 N.J. at 148.

21

Moreover, much of the Court's analysis in <u>Guerra</u> focused on the validity of the telephonic search warrant, and the consequences of finding a warrant invalid. <u>See id.</u> at 152-53. Although the Court invalidated the warrant, we ultimately held that the search of the trunk was nevertheless permissible based on the automobile exception. <u>Id.</u> at 150-52. The Court did not conduct a robust analysis of the issue, instead relying primarily on <u>Kahlon</u> -- which, as we have explained, is factually distinguishable from the present case. <u>See id.</u> at 150. The Court also cited to <u>Patino</u> for the general proposition that the "extent of [the] search of an automobile depends upon the degree of the probable cause." <u>Ibid.</u>

Additionally, the facts establishing probable cause in <u>Guerra</u> are distinguishable from the present case as well. In <u>Guerra</u>, the officers detected an odor of raw marijuana apparently too strong to have emanated from the small suitcase in the car. <u>Ibid.</u> And evidence indicated that the trunk was hanging low as if carrying significant weight, a fact that the trial court found persuasive. <u>See ibid.</u> Here, there is no claim that Trooper Travis considered whether the odor he smelled could or could not have emanated from the vehicle's interior. Rather, he testified only to generally detecting the scent of marijuana in the car's interior prior to expanding his search beyond the occupants and the passenger compartment. On that basis, the degree of

22

probable cause was insufficient to justify searching the engine compartment and the trunk. There is certainly a difference between generally detecting the smell of a prohibited substance and detecting a smell of the substance of such a magnitude as to immediately suggest to officers that vast quantities of the substance were present, coupled with observation that the car's trunk appeared to be hanging low due to heavy weight.

Here, Trooper Travis had no definitive information that defendant possessed marijuana because his initial search did not reveal any illegal contraband. Neither the smell nor the "shake in defendant's beard" fulfilled the Patino requirement that an officer have specific justification to extend a search under the automobile exception beyond the defendant's person and the passenger compartment. And any information contained in or suggested by the BOLO could not contribute to a probable cause determination based on the trooper's smell of marijuana. Accordingly, we find that Trooper Travis's searches of the engine compartment and trunk were unlawful, and the evidence seized from those illegal searches must therefore be suppressed.

This holding in no way suggests that areas within the interior of the car would require separate probable cause findings in order to conduct a warrantless search. We are not dividing up the interior of vehicles such that an officer would need to establish different or additional probable cause to search

23

the front seat as opposed to the back seat, for example.  Pursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior.

We are also not suggesting that the warrantless search of a trunk or engine compartment will always require separate probable cause findings. Instead, we reiterate that a warrantless search of a car "must be reasonable in scope" and "strictly tied to and justified by the circumstances which rendered its initiation permissible."  Patino, 83 N.J. at 10-11.  However, a generalized smell of raw marijuana does not justify a search of every compartment of an automobile.

We briefly note the important changes to the Criminal Code regarding marijuana with the Legislature's passage of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, in 2021.  Through CREAMMA, the Legislature fashioned "a new approach to our marijuana policies" and "legaliz[ed] a form of marijuana, to be referred to as cannabis."  N.J.S.A. 24:6I-32(a). CREAMMA's amendments to N.J.S.A. 2C:35-10 largely decriminalized the possession of unregulated marijuana occurring on or after its effective date of February 22, 2021.  N.J.S.A. 2C:35-10(a)(4)(b).

CREAMMA further added a new section in the Criminal Code stating that neither "the odor of cannabis or burnt cannabis," nor the "possession of marijuana or hashish without evidence of quantity in excess of any amount that would exceed the amount . . . which may be lawfully possessed," "shall, individually or collectively, constitute reasonable articulable suspicion of a crime" except on school property or at a correctional facility.  N.J.S.A. 2C:35-10c.  Though N.J.S.A. 2C:35-10c has no bearing on our present probable cause analysis because the search at issue predated the passage of CREAMMA, going forward, we anticipate that cases involving the automobile exception and probable cause to search a vehicle based solely on the smell of marijuana will likely be few and far between.

V.

For the foregoing reasons, the motion to suppress should have been granted, so we reverse the Appellate Division's judgment and remand the matter for further proceedings consistent with this opinion.  On remand, defendant shall be given the opportunity to withdraw his guilty plea.


CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion.

25