**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1403-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN S. KERKULA,

     Defendant-Appellant.

_____

> Submitted March 25, 2025 – Decided August 4, 2025
>
> Before Judges Smith and Chase.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 22-08-1470.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Margaret R. McLane, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Matthew J. Platkin, Attorney General, attorney for respondent (Kaili E. Matthews, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After pleading guilty to second-degree unlawful possession of a weapon, defendant John Kerkula received a sentence of five years' incarceration in state prison, with forty-two months of parole ineligibility. He now appeals the trial court's denial of his motion to suppress. We affirm for the reasons which follow.

I.

We derive the facts from the testimony of Officer Jospeh Giorgi at the suppression hearing.

On August 23, 2020, around 9:56 p.m., Giorgi was on patrol near Buttonwood Street and Garden Street in Mount Holly. Giorgi's patrol car was equipped with a motor vehicle recorder ("MVR") and Giorgi was wearing a body camera. While on patrol, Giorgi and his partner, Officer Castle, observed a dark-colored car, with out-of-state registration improperly parked on Buttonwood Street, with several people inside and its lights on. Moments later, Giorgi saw the same vehicle, which, by then, had pulled into a parking lot. Giorgi observed the car exit the parking lot and re-enter the roadway. Giorgi observed the car fail to come to a complete stop at an intersection. Giorgi then followed the car. While doing so, he observed the car commit another traffic violation and stop in the middle of the crosswalk. Giorgi then pulled the vehicle over in a lightly trafficked location which was close to headquarters and reasonably well it.

2

Giorgi approached the car and saw four occupants. Defendant was the driver. Giorgi testified that when he asked for defendant's license, registration, and car insurance, defendant was confrontational. Defendant produced his license and registration but failed to produce proof of car insurance. Giorgi noted that defendant was wearing a backpack in front of his body close to his chest. Giorgi testified that, based on his training and experience, this was sometimes used to conceal narcotics or weapons.

Giorgi asked defendant to step out of the car. After Giorgi repeated the instruction, defendant stepped out of the vehicle and went to the rear of the car. Giorgi returned to his patrol car to investigate the stopped vehicle. He learned that the car defendant was driving was a rental vehicle and that the rental agreement had expired days prior. Further, the rental agreement did not match the description of the car defendant was operating. As defendant got out of the car, Castle, who was standing outside the front driver's side door, noticed marijuana shake, or "small pieces of marijuana," on the driver's side floor of the vehicle and on the driver's seat. He immediately informed Giorgi, who went over to the driver's side window and confirmed that he also saw marijuana shake from the outside of the vehicle.

3

After noticing the shake, the officers asked the remaining occupants to exit the car so they could conduct a search of the vehicle. After the occupants got out the car, they were patted down for weapons. Giorgi then searched the driver's side of the car while Officers Pirro and Castle searched the passenger side. Pirro and Castle found a scale in the car with what they believed to be drug residue on it. Giorgi found multiple plastic bags in the car, as well what he believed was "burnt marijuana residue" in the cup holder. Giorgi also stated that he smelled marijuana close to the area where the shake was observed. While investigating the marijuana shake on the floor, Giorgi noticed that the area near the steering console where the driver's right leg would rest looked as if it had been tampered with, specifically where the plastic meets the floorboard. Giorgi pulled back the plastic and found a handgun. Immediately after finding the gun, the officers placed two of the vehicle occupants into custody. At that point, defendant and another occupant fled the scene before eventually being apprehended.

After defendant and the other occupants were arrested, the officers continued their vehicle search. While doing so, the officers found a second handgun in the same area where they found the first gun. The ongoing search turned up more items, including cell phones and cash totaling around $700.

4

Defendant was indicted and charged with: fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); fourth-degree possession of hollow-nosed bullets, N.J.S.A. 2C:39-3(f)(1); two counts of first-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); and two counts of second-degree possession of a weapon as a certain person, N.J.S.A. 2C:39-7(b). Defendant moved to suppress the physical evidence seized from his vehicle.

The court denied defendant's motion for suppression. The court found the sole witness, Giorgi, credible, then made a series of factual findings and legal determinations in a concise, but comprehensive oral statement of reasons. First, the court found the motor vehicle stop of defendant's vehicle was permissible, citing the officers' observations of three motor vehicle infractions before stopping defendant's car. Next, the court found the marijuana shake which was spotted on the driver's seat, the smell of burnt marijuana, and the fact that this vehicle stop took place in a high crime area provided probable cause for the officers to direct the occupants to exit the vehicle and conduct a search. The court reasoned that the search of the vehicle was valid and based on probable cause, which ultimately led to the discovery of the first gun, and the flight of defendant and one of the other occupants. Finally, the court found that defendant's flight from the area after the first gun was found, "add[ed] to the

A-1403-23

totality of the circumstances." The judge found that when the two people who fled were apprehended, the exigent circumstances continued, which allowed the officers to re-enter the car and find the second gun. After the court denied defendant's motion to suppress, defendant pled guilty to an amended count, second-degree unlawful possession of a weapon without a permit.

Defendant appealed, making the following arguments:

> THE POLICE DID NOT HAVE PROBABLE CAUSE [TO BELIEVE] THE CAR CONTAINED ANY ADDITIONAL CONTRABAND, . . .DID NOT HAVE . . .PROBABLE CAUSE . . . TO DISASSEMBLE THE INTERIOR OF THE CAR AND WERE NOT PERMITTED TO CONDUCT A SECOND WARRANTLESS SEARCH.
>
> > A. The Police Did Not Have Probable Cause That The Car Contained Contraband.
> >
> > B. Alternatively, Police Lacked Probable Cause That Would Permit Them To Search Beyond The Ordinary Passenger Compartment, Let Alone To Dismantle The Car.
> >
> > C. Alternatively, Police Were Not Permitted To Re-Enter The Car And Conduct A Second Warrantless Search.

A-1403-23

II.

The scope of review on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, . . . a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). This is because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Therefore, we "will not disturb the trial court's factual findings unless they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Goldsmith, 251 N.J. 384, 398 (2022) (internal quotations omitted) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

"It is a well-settled principle that . . . appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . ." Nieder v. Royal Indem.

A-1403-23

Ins., 62 N.J. 229, 234 (1973).  If the error was not raised below, the plain error rule, Rule 2:10-2, applies.

### III.

Defendant first argues the police officers lacked probable cause to search the vehicle because they merely observed a small amount of marijuana without detecting any marijuana odor.  We are not persuaded.

Under New Jersey law, police may conduct a warrantless search of an automobile when they "have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous."  State v. Witt, 223 N.J. 409, 447 (2015).  Probable cause "requires 'a practical, common[-]sense determination whether, given all of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found."'"  State v. Myers, 442 N.J. Super. 287, 301 (App. Div. 2015) (quoting State v. Moore, 181 N.J. 40, 46 (2004)).  Under Witt, a warrantless search of an automobile is valid when it is "(1) based on probable cause and (2) arising from unforeseeable and spontaneous circumstances."  223 N.J. at 450.

"Police must establish a reasonable and articulable suspicion that a search will yield evidence of criminal activity before . . . search[ing] [a vehicle]

A-1403-23

following a routine traffic stop." State v. Carty, 170 N.J. 632, 645-46 (2002); see State v. Thomas, 392 N.J. Super. 169, 188-89 (App. Div. 2007). This determination must rest on an objective evaluation of the circumstances considering the officer's experience and knowledge, as well as the facts available during the encounter. See State v. Alessi, 240 N.J. 501, 518, 521-23 (2020); State v. Chisum, 236 N.J. 530, 545-46 (2019); State v. Pineiro, 181 N.J. 13, 20-21 (2004); State v. Stovall, 170 N.J. 346, 361 (2002).

Prior to marijuana legalization in New Jersey,[1] courts "recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (internal quotation marks omitted) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)); State v. Birkenmeier, 185 N.J. 552, 563 (2006); State v. Mandel, 455 N.J. Super. 109, 114-15 (App. Div. 2018); State v. Myers, 442 N.J. Super. 287, 304 (App. Div. 2015).

---

[1] The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to – 56, became effective on February 22, 2021. Under the Act, an odor of marijuana cannot create a reasonable suspicion or probable cause to conduct a warrantless search. N.J.S.A. 2C:35-10c(a).

Additionally, when determining whether probable cause exists for an arrest, courts must examine the totality of the circumstances "from the standpoint of an objectively reasonable police officer." Ibid. (citations omitted) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). The circumstances courts consider include an officer's:

> "common and specialized experience," [Schneider v. Simonini, 163 N.J. 336, 362 (2000)], and evidence about an area's high-crime reputation, State v. Johnson, 171 N.J. 192, 217 (2002). Although several factors viewed in isolation might not suffice, these pieces of information cumulatively may "become sufficient to demonstrate probable cause." State v. Zutic, 155 N.J. 103, 113 (1998).
>
> [State v. Moore, 181 N.J. 40, 46 (2004).]

Here, the record shows that probable cause existed to search the vehicle. Officer Giorgi was patrolling a high-crime, high-narcotic area when he observed a car illegally parked with multiple occupants inside. After noting this traffic violation and finding the situation suspicious, he saw the vehicle again and observed two additional traffic violations before lawfully initiating a stop. During this valid traffic stop, Giorgi observed defendant carrying a backpack in front of him, which, based on the officer's experience, indicated possible concealment of illegal contraband. As he stood outside the vehicle using his

flashlight, Giorgi observed what appeared to be marijuana "shake" on the driver's seat and floor. Officer Giorgi also detected a burnt marijuana odor emanating from the vehicle. Considering the totality of circumstances—the apparent marijuana shake, the burnt marijuana odor, the suspicious backpack positioning, and the high-crime location—we conclude the officer had established probable cause to search the vehicle.

The search revealed a scale with residue and small sandwich bags. Although the "shake" later proved not to be marijuana, at the time of the incident, Giorgi contemporaneously consulted fellow officers who confirmed his reasonable suspicion. On this record, we agree with the motion court's assessment, and conclude that an objectively reasonable officer would believe additional marijuana would be found in the car, thus satisfying the first prong of the Witt test.

The record shows unforeseeable and spontaneous circumstances which satisfy the second Witt prong. Giorgi: (1) conducted a routine patrol; (2) spotted a vehicle parked illegally and stopped in the middle of a crosswalk, establishing reasonable suspicion; and (3) had no prior knowledge or specific target of this defendant or vehicle. His observations occurred during a routine traffic stop which was initiated based on observed violations. Giorgi lacked advanced

11

knowledge of contraband in the vehicle and had not planned the search before the stop. Instead, he observed potential contraband spontaneously during a legitimate traffic stop. See State v. Rodriguez, 459 N.J. Super. 13 (App. Div. 2019). The vehicle search was neither premeditated nor pretextual. Because the search satisfies both Witt prongs, we conclude the officer properly conducted the search under the automobile exception to the warrant requirement. We find no error here.

Defendant next argues that, even with probable cause for the initial vehicle search, the officers exceeded permissible scope by pulling back the plastic panel near the driver's seat. We do not agree.

"[A] warrantless search of a car 'must be reasonable in scope' and 'strictly tied to and justified by the circumstances which rendered its initiation permissible.'" State v. Cohen, 254 N.J. 308, 327-28 (2023) (citing State v. Patino, 83 N.J. 1, 10-11 (1980)). A search, though "validly initiated, may become unreasonable because of its intolerable intensity and scope." Patino, 83 N.J. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 18-19 (1968)). "The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983) (citations omitted).

Here, the officers observed a tampered panel near marijuana "shake" visible on the floorboard, accompanied by a strong marijuana odor. This fact creates a direct connection between the observed contraband, the "shake," and the out-of-place plastic panel, giving officers probable cause to believe additional contraband might be concealed in that location.

We consider defendant's reliance on State v. Patino, 83 N.J. 1, 5-6 (1980), misplaced. In Patino, after finding marijuana in the passenger compartment, an officer searched the trunk despite finding no additional contraband in the vehicle's interior. 83 N.J. 1, 5-6. The Supreme Court held that the mere presence of marijuana did not "give rise to an inference that would lead a police officer of ordinary prudence and experience conscientiously to entertain a strong suspicion that additional criminal contraband is present in the trunk of the automobile." Id. at 12. The Court determined the trunk search "was purely investigatory and the seizure a product of luck and hunch, a combination of insufficient constitutional ingredients." Id. at 7.

We easily distinguish between Patino and the facts before us. In Patino, the officer progressed from finding marijuana in the passenger compartment to searching the trunk without an articulable reason to believe contraband would be there. Here, officers observed both marijuana "shake" and a loose panel in

13

the same area of the vehicle. This fact created a direct nexus between the observed contraband and the progression of the search to include pulling the loose panel back.

Similarly, defendant's reliance on State v. Cohen, 254 N.J. 318 (2023), falls flat. In Cohen, the Court explained that "cases in which our courts have upheld searches that extended to the trunk or other areas beyond the passenger compartment have involved facts indicating something more than simply detecting the smell of marijuana from the interior of the car." Id. at 324. Unlike Cohen, the facts here involve searching a specific area within the passenger compartment where officers had already observed contraband in plain view. The record shows that the officers had training and experience regarding vehicle modifications to conceal contraband, which further justifies the expanded search. Their observation of the tampered panel, like officer observations made in State v. Pearson, 232 N.J. 341, 350 (2018) and State v. Napper, 453 N.J. Super. 160,163 (App. Div. 2018), combined with nearby marijuana "shake" and the smell of marijuana odor, provided specific reasons to believe contraband might be hidden in this location.

We conclude the officers' examination of the loose panel near the driver's seat was reasonable in scope and justified by the specific circumstances. The

A-1403-23

search focused on an area where officers had probable cause to believe contraband might be found, based on proximity to visible marijuana "shake," the smell of marijuana odor, and their training regarding vehicle modifications used to conceal contraband.

Finally, defendant argues for the first time that the officers' search leading to the seizure of the second gun was improper because, at that point, any probable cause to believe the car contained additional contraband was no longer spontaneous or unforeseeable. Defendant contends that no exigent circumstances existed which would have allowed the officers to re-enter the vehicle a second time. We need not consider arguments raised for the first time on appeal, except to consider jurisdictional matters or matters which substantially implicate the public interest. See Fuhrman v. Mailander, 466 N.J. Super. 572, 596 (App. Div. 2021); see also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We are unconvinced by defendant's argument, and while we need not do so, we comment briefly for completeness' sake.

We first note that defendant's failure to raise this argument below foreclosed the State from building a record so that the trial court could make adequate findings of fact and conclusions of law to decide the issue. That said, we conclude defendant's argument has little to no merit, and we dispose of it

here.  The reason behind the officers' need to enter the vehicle a second time was defendant's conduct in fleeing the scene after the first gun was discovered behind the loose driver's side panel.  The record shows that the second gun was discovered in the same location as the first.  Had defendant not fled, there would have been no reason for a "second entry," or "second search."  The search itself can be characterized as a single search, interrupted by defendant's flight, and resuming after defendant's apprehension.

This fact-pattern is consistent, in our view, with the doctrine of inevitable discovery, and we find no constitutional fault in the officers' actions leading to seizure of the second gun.  Under the inevitable discovery doctrine, courts may admit evidence obtained through illegal means if the State demonstrates that "the evidence in question would inevitably have been discovered without reference to the police error or misconduct."  State v. Scott, 474 N.J. Super. 388, 420 (App. Div. 2023) (quoting Nix v. Williams, 467 U.S. 431, 448 (1984)); see also State v. Sugar, 108 N.J. 151, 156 (1987).  To invoke this doctrine, the State must prove by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case;

(2) under all the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and
(3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

[Scott, 474 N.J. Super. at 421(citation omitted).]

On this record, we conclude that the inevitable discovery exception applies, and we again discern no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

17